IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,951

STATE OF KANSAS,
*Appellee*,

v.

SHEENA THOMAS,
*Appellant*.

SYLLABUS BY THE COURT

1.

The obligation to register mandated by portions of the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq., is not part of a criminal sentence.

2.

The absence of court-made fact-findings contemplated by KORA is not a sentencing error amenable to the remedy of a remand. Such an absence is not error at all.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 27, 2014. Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed April 13, 2018. Judgment of the Court of Appeals affirming in part, vacating in part, and remanding with directions the judgment of the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part.

*Samuel Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: A jury convicted exotic dancer Sheena Thomas of one count of aggravated battery with a deadly weapon against her fellow dancer, Traci Borntrager. The attack occurred at an establishment called Pleasures, the two women's place of work. The weapon in question—a stiletto heel—was an accoutrement of the trade. Following her conviction, the district court sentenced Thomas to serve 24 months' probation and informed her of her duty to register as a violent offender under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. However, while the jury found the stiletto heel was indeed a deadly weapon, the district court itself neither considered that question nor made such a finding on the record.

Thomas has attacked her conviction on appeal in three ways: (1) she claims the district court erred when it disallowed cross-examination questioning of Borntrager concerning a separate civil lawsuit Borntrager had filed against their mutual employer; (2) she claims the prosecutor erred in closing arguments by impermissibly misstating evidence and diluting the State's burden of proof; and (3) she claims cumulative error deprived her of a fair trial. The Court of Appeals rejected each of these arguments, as do we.

Thomas also argued on appeal that because the district court never made a finding on the record that the stiletto heel was a deadly weapon, she has no obligation to register as a violent offender. While the Court of Appeals agreed with Thomas, it characterized the district court's lack of a finding as an "error" and decided that although the registration requirement had to be vacated, the case could be remanded to the district court in order for the lower court to consider afresh the deadly weapon question. Thomas petitioned this court for review of all adverse decisions. Specifically, she now claims that because registration under KORA is not part of her sentence, the Court of Appeals cannot remand the matter to the district court.

2

Because the State did not file a cross-petition for review, we will not review the panel's decision that without a court-made deadly weapon finding in the record, the registration requirement is not triggered. Though in another case decided today, we conclude that such a finding is in fact required before the obligation to register will arise under KORA. See *State v. Marinelli*, 307 Kan. ___, ___ P.3d ___ (2018) (No. 111,227, this day decided), slip op. at 26-27. Here, however, we are limited to reviewing the availability of a remand to "remedy" any lack of court-made findings.

FACTUAL AND PROCEDURAL BACKGROUND

When three law enforcement officers responded to a disturbance call from Pleasures, they learned two dancers—"Sugar" and "Gypsy"—had been involved in a fight. Sugar and Gypsy turned out to be, respectively, Thomas and Borntrager. The altercation began with a dispute over a sale of clothing and ended when Borntrager sustained a significant cut to her forehead and a concussion.

The State charged Thomas with a single count of aggravated battery, and the case proceeded to a three-day jury trial. Borntrager testified she was having a drink with a patron when Thomas approached her and demanded a refund for the clothing. Borntrager claimed Thomas was very aggressive, so they went together to the club's manager to resolve the dispute. During the conversation, Borntrager said Thomas tried to attack her, but the manager separated the two. Borntrager returned to the patron's table. Shortly thereafter, Thomas rushed her and stabbed her in the forehead with a "spiked shoe heel." Two patrons corroborated Borntrager's testimony at trial.

Thomas presented a different account. According to her, Borntrager was the initial aggressor. Thomas claimed Borntrager approached her while she was at the bar speaking to the manager. Borntrager shoved Thomas, and the club manager separated the two.

3

Thomas testified that after the shove, she was walking toward the dressing room when Borntrager came at her swinging, and they eventually went to the ground where they "rumbled on the floor." Thomas denied hitting Borntrager with a spiked high-heeled shoe, but stated that they had ahold of each other's hair and were hitting each other in the face.

The club's cook, Reuben Pickens, witnessed only the first confrontation at the bar. He testified that Borntrager was the initial aggressor and that she "jumped up at Sugar, said bitch, you want to go," swung, and struck Thomas before they were separated. Pickens told the jury he did not witness the second altercation.

The jury ultimately found Thomas guilty of aggravated battery pursuant to K.S.A. 2011 Supp. 21-5413(b)(1)(B), which required a finding that Thomas used a deadly weapon. The district court sentenced Thomas to serve 24 months' probation and imposed an underlying 12-month prison sentence. The court also ordered Thomas to pay restitution but left the matter open for 30 days so the parties could determine the precise amount. Thereafter, the court told Thomas: "This is a registration case. I am informing you, you have a duty under the Kansas Offender Registration Act to register according to that law." The court then reviewed the notice of duty to register with Thomas and concluded sentencing.

Thomas filed a notice of appeal the same day as sentencing. Nearly one month later, the court entered an order establishing the amount of restitution as $269.86 to be paid to Kansas Medicaid, thereby making the notice of appeal effective, depriving the district court of jurisdiction, and vesting jurisdiction in the appellate courts. See *State v. Hall*, 298 Kan. 978, Syl. ¶ 4, 319 P.3d 506 (2014).

The Court of Appeals upheld Thomas' conviction but vacated her registration requirement. *State v. Thomas*, No. 109,951, 2014 WL 3020029 (Kan. App. 2014)

4

(unpublished opinion). The panel ruled Thomas' Sixth Amendment right to confrontation was not violated when the district court excluded evidence concerning a civil lawsuit Borntrager had previously filed and settled against Pleasures. The Court of Appeals held that evidence of a settled lawsuit was "only marginally relevant—if at all" and introduction of such evidence would have confused the jury. 2014 WL 3020029, at *4-5. Moreover, the panel determined any potential error was harmless beyond a reasonable doubt given the strength of the evidence against Thomas. 2014 WL 3020029, at *5-6. The Court of Appeals also rejected Thomas' claims of prosecutorial error (then styled as "prosecutorial misconduct"). 2014 WL 3020029, at *7-10.

Lastly, the panel determined that although there was evidence in the record that could have permitted the court to find Thomas used a deadly weapon during the commission of a person felony, the district court in fact did not make this specific finding. 2014 WL 3020029, at *11-12. To remedy what the Court of Appeals styled an "error," it vacated Thomas' registration requirement and remanded the case to the district court "to determine if the high-heel shoe used in the commission of the crime concluded [*sic*] a deadly weapon requiring registration under the KORA." 2014 WL 3020029, at *12.

Thomas petitioned this court for review. In addition to the claims of error she asserted below, she now claims the Court of Appeals did not have the authority to remand her case to the district court for it to make the necessary deadly weapon finding because the court has already imposed a legal sentence. We granted Thomas' petition for review on all issues.

ANALYSIS

We begin with Thomas' claims of reversible trial error, then proceed to the Court of Appeals' treatment of her alleged duty to register as a violent offender.

5

*The district court did not err by excluding evidence concerning the civil lawsuit between Borntrager and Pleasures.*

During cross-examination, Thomas' attorney asked Borntrager if she had sued Pleasures following the fight. The State objected on relevancy grounds, and the objection was sustained. A moment before the State could lodge its objection, however, Borntrager answered, "Yes, I did." A bench conference and an off-the-record discussion was then conducted. After the discussion, Thomas' attorney resumed questioning Borntrager and did not ask about the lawsuit. Later, outside the presence of the jury, the court made a record regarding the objection. The State proffered that Borntrager had filed a civil claim against Pleasures and that it had been settled for $5,000. The court stated computer records confirmed the suit had been dismissed. The court then ruled:

> "[A]fter hearing some argument, and basically defense's position was it shows bias, motive, and the State basically objected, but the position was, well, that's going to open the door to other testimony. . . . [M]y ruling is that it's not relevant. And mostly because the matter is settled. If there was a . . . pending lawsuit, I think that . . . could make a difference for me. But it was proffered to me that the matter was settled. And so when I take that and compared with the . . . issues and the door that would be opened and all the collateral information that the answer to that question would open up, . . . including possible insurance issues and . . . remedial actions . . . . But there would be an incredible amount of information that would become relevant by the State, then, to address why it was settled, whether insurance was involved and that sort of thing. All of those are collateral to the issue here. And so weighing those two things, . . . the lack of relevancy with the problem that that open door would cause, as well as the relative effect of that additional information was the reason why I ruled like I did.
>
> "Now, that being said, you all are welcome to supplement the record for its accuracy or inaccuracy as to my memory.

6

"[State's Attorney]: The only thing I would add, Judge, I made the point that the lawsuit wasn't pending at the time she gave her initial statement to the police and that was something that obviously came after the fact. And it was not pending today as she testified. So other than that, I don't believe I have any additional facts.

. . . .

"[Thomas' Attorney]: Other than the fact that after what he is saying, obviously she—by the time she did give her statement to the police it was the next day. I think any reasonable person could foresee that if she was injured at some place that she might be able to sue them, so that could cause her to make statements the way she did to the detective."

On appeal, Thomas claims the district court's ruling violated her constitutional right to confront the State's witnesses. The Sixth Amendment to the United States Constitution guarantees that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." See also Kan. Const. Bill of Rights, § 10 (providing a criminal defendant the right "to meet the witness face to face"). Inherent in the Sixth Amendment's right of confrontation is a criminal defendant's right of cross-examination. *Bruton v. United States*, 391 U.S. 123, 126, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). Indeed, "[t]he primary purpose of the Sixth Amendment Confrontation Clause is to give the accused the opportunity for cross-examination to attack the credibility of the State's witnesses." *State v. Friday*, 297 Kan. 1023, Syl. ¶ 19, 306 P.3d 265 (2013). Cross-examination, which is essential to a fair trial, "helps assure the 'accuracy of the truth-determining process.'" *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

The right to cross-examine, however, is not absolute. In certain circumstances it must "bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295; see *State v. Reed*, 302 Kan. 227, 246, 352 P.3d 530 ("'The Sixth Amendment right of confrontation is satisfied if the accused confronted the

7

witnesses against him at any stage of the proceedings in the same case and has had an opportunity of cross-examination.'"), *cert. denied*, 136 S. Ct. 344 (2015).

The United States Supreme Court has described the balance between a defendant's right to confrontation and a district court's evidentiary discretion:

"Indeed, '"[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."' [Citations omitted.] Of particular relevance here, '[w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.' [Citations omitted.] It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, 'the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)." *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

Because a district court may exercise reasonable control over the scope of cross-examination, appellate courts review the court's decision to limit cross-examination for an abuse of discretion. *State v. Wells*, 296 Kan. 65, 86, 290 P.3d 590 (2012). A district court abuses its discretion when (1) no reasonable person would have taken the view adopted by the district court; (2) the judicial action is based on an error of law; or (3) the judicial action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Since Thomas is the party asserting an abuse of discretion, she bears the burden of demonstrating the abuse. See *Friday*, 297 Kan. at 1044.

8

This court previously addressed a similar situation in *State v. Rowland*, 172 Kan. 224, 239 P.2d 949 (1952). In that case, several individuals accused Rowland of financial crimes that led to criminal charges against him. Before trial, Rowland filed a civil lawsuit against some of the alleged victims. At trial, Rowland attempted to attack the witnesses' credibility during cross-examination by questioning them about his pending lawsuit, but the trial court disallowed the questioning.

On appeal we held Rowland was entitled to a new trial because the district court "cut off completely the right of the defendant to cross-examine those witnesses who had been defrauded and whose testimony was absolutely necessary to a conviction, as to their being parties to the civil action brought by him against them and interested in the outcome of the criminal action." 172 Kan. at 229. *Rowland* suggests that an ongoing civil lawsuit involving the defendant and affecting the pecuniary interests of the State's witnesses is relevant impeachment evidence that may be explored on cross-examination during the criminal trial. See *State v. Frazier*, No. 112,368, 2016 WL 1545628, at \*18-19 (Kan. App. 2016) (unpublished opinion) (Atcheson, J., dissenting) (arguing the district court erred by excluding evidence of the witness' ongoing civil action against the defendant for injuries arising out of the same acts for which defendant was being prosecuted), *rev. denied* 306 Kan. 1323 (2017); see also *State v. Etienne*, 146 N.H. 115, 118, 767 A.2d 455 (2001) ("We reiterate our holding that a criminal defendant's right to confront adverse witnesses necessarily includes the right to cross-examine regarding motive and bias arising from contemporaneous civil actions in which the witness has a financial interest."); *Maslin v. State*, 124 Md. App. 535, 541-42, 723 A.2d 490 (1999) (finding that defendant should have been able to cross-examine the victim-witness regarding a pending $1.6 million civil lawsuit, which arose in the context of a police investigation into the victim's allegations of sexual abuse by the defendant); *State v. Milton*, 280 Mont. 142, 145-46, 930 P.2d 28 (1996) (a criminal defendant may cross-examine a witness about a pending lawsuit regarding the events that gave rise to the criminal prosecution); *Shelby v. State*, 819 S.W.2d 544, 551 (Tex. Crim. App. 1991) (trial

9

court violated the defendant's right of confrontation when it refused to allow the defendant to cross-examine the victim's mother about a pending $125,000 lawsuit against the defendant and the owners of the apartment complex at which the victim was allegedly sexually abused by the defendant).

But Borntrager's suit was settled by the time of her trial testimony. Decisions elsewhere suggest that once the lawsuit has settled, the motive for providing false testimony either evaporates or at least dissipates to a level at which introduction of the collateral action would primarily serve to confuse and confound the jury. See *Moran v. State*, 350 S.W.3d 240, 247 (Tex. App. 2011) (district court did not abuse its discretion by disallowing defense counsel from questioning victim's mother about a settled civil lawsuit against the defendant); *State v. Otto*, 50 Conn. App. 1, 9, 717 A.2d 775 (1998) ("Although a pending claim or civil suit by one of the witnesses might suggest evidence of bias or interest because the outcome of the criminal trial would bear directly on the success of the civil action, there was no such pending action here.").

Moreover, Thomas was not named as a party to the suit, which further attenuates the relevance of the suit to alleged bias on Borntrager's part. Finally, our review is hampered by the fact that Thomas never made a proffer on the record regarding the civil lawsuit. "[A]n appellate court may not speculate as to what may have existed at the time of the hearing but rather must consider the evidence of record and base its decisions on facts in the record." *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 513, 110 P.3d 438 (2005).

Simply put, the district court did not "cut off completely" Thomas' ability to confront Borntrager through cross-examination, but rather imposed reasonable limits that were based on legitimate concerns. Thomas has failed to articulate, let alone demonstrate, how the existence or factual details of the civil lawsuit could have provided a basis to

impeach Borntrager's testimony. We can discern no abuse of discretion in the district court's ruling.

*Any prosecutorial error was harmless.*

Thomas next claims the prosecutor committed reversible error in closing arguments. At the time the parties submitted their briefs to the Court of Appeals and Thomas filed her petition for review with this court, we analyzed "prosecutorial misconduct" claims using the framework described in *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 (2004). By the time the case reached oral arguments, however, we had overruled portions of *Tosh* and adopted a new framework for what is now known as "prosecutorial error." *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). Thomas filed a letter of additional authority in accordance with Supreme Court Rule 6.09(b) (2018 Kan. S. Ct. R. 39), noting the change in the law.

Generally, an opinion changing the law acts prospectively, applying "'to all cases, state or federal, pending on direct review or not yet final.'" *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013) (quoting *State v. Berry*, 292 Kan. 493, 514, 254 P.3d 1276 [2011]). But because this case was fully briefed under *Tosh*, and the parties have not had the opportunity to fully argue this case under the *Sherman* rubric, we will apply both *Sherman* and *Tosh*. See *State v. Kleypas*, 305 Kan. 224, 314, 382 P.3d 373 (2016), *cert. denied* 137 S. Ct. 1381 (2017). In the end, Thomas is not entitled to reversal under either standard.

*Sherman* and *Tosh* begin with the same question—whether the prosecutor's comments fall outside the wide latitude granted to prosecutors. *Sherman*, 305 Kan. at 104, 109 ("The first step in this review . . . is sound and is left undisturbed by our decision today."); *Tosh*, 278 Kan. at 85. If error is found, *Tosh* dictated a three-factor reversibility analysis with no single factor controlling: (1) whether the misconduct was

gross and flagrant; (2) whether it was motivated by prosecutorial ill will; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. *Tosh,* 278 Kan. at 93. The reversibility test under *Sherman* simply asks whether the State has carried its burden to demonstrate "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *Sherman,* 305 Kan. 88, Syl. ¶ 8.

Thomas first contends the State diluted its burden of proof during closing arguments by making the following comments:

> "[A]s we talked at length about in jury selection, the next instruction, it is your responsibility, it's for you to determine the weight and the credit to give the testimony of each witness. When somebody gets up here and testifies, you decide how much that testimony is going to be worth to you, if that testimony is credible or not, and how that's going to affect whether the State has met its burden of proof or not. And if you find a witness's testimony credible, then that evidence is going to weight in that regard.

> "If you find a witness's testimony is not credible, you may ask yourself why. You may realize that the incredible . . . testimony of that witness actually tips the scale back the other way because . . . whatever their motive may be for testifying in such a way. That's what this whole case is about, credibility."

The prosecutor later returned to this point on rebuttal:

> "So the question that you have back there is whether [the patron's] testimony is consistent with the other witnesses, that the defendant had a shoe in her hand. If it is credible—if this testimony is credible, the only reasonable conclusion you can draw is the defendant is guilty. That's it. The inconsistencies between the witnesses' testimony, this is real life. These are real people. That is what you would expect to see happen."

12

Initially, we note that Thomas' counsel did not object to this comment. While this does not impede our review of the issue, "'[T]he presence or absence of an objection may figure into our analysis of the alleged misconduct.'" *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017) (quoting *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 [2009]).

"A prosecutor commits misconduct by making arguments that dilute the State's burden of proof or attempt to define reasonable doubt." *State v. Holt*, 300 Kan. 985, Syl. ¶ 4, 336 P.3d 312 (2014). Thus, "prosecutors embellish on the definition of the burden of proof in criminal cases at their peril." *State v. Magallanez*, 290 Kan. 906, 914, 235 P.3d 460 (2010).

Thomas correctly points out that this court has found that the State exceeds its wide latitude when it equates reasonable doubt with a common sense, intuition, or a probability burden. See *Holt*, 300 Kan. at 1003-04 (the State diluted its burden of proof when it told the jury that it was its "'responsibility . . . to decide what is possible and what is probable"'); *Magallanez*, 290 Kan. at 914 (holding that the burden of proof was impermissibly diluted when the prosecutor stated that "the measure of reasonable doubt is 'an individual standard . . . a standard that when you believe he's guilty you've passed beyond"'); *State v. Brinklow*, 288 Kan. 39, 49-50, 200 P.3d 1225 (2009) (a prosecutor erred by using the phrase "sometimes you just know" to describe the State's burden of proof); *State v. Mitchell*, 269 Kan. 349, 360, 7 P.3d 1135 (2000) (holding that "[t]he remarks by the prosecutor in this case defining 'reasonable doubt' as 'common sense' were improper").

Here, Thomas argues the prosecutor's comments conflated the State's burden of proof with a mere credibility determination. We disagree. Rather than attempting to alter the burden of proof, the prosecutor was simply reminding the jury of its duty to determine witness credibility. See *State v. Chanthaseng*, 293 Kan. 140, 148, 261 P.3d 889 (2011) (a

13

prosecutor may explain to the jury what it should look for in assessing witness credibility without offering the prosecutor's personal opinion of a witness' credibility).

Appellate courts consider the prosecutor's comments in the context in which they were made rather than in isolation. *State v. Davis*, 306 Kan. 400, 413, 394 P.3d 817 (2017). Immediately before the prosecutor made these challenged comments, he unequivocally told the jury that the State was required to prove the elements of aggravated battery beyond a reasonable doubt. We find no error in these statements.

At another point during closing arguments, the prosecutor stated:

"[Pickens] doesn't undercut the credibility. [Pickens] tells you the defendant comes up to [Borntrager] and says . . . his testimony, bitch, you want to go. Again, the defendant is being the aggressor.

"And the defendant's testimony certainly doesn't undercut—

"[Thomas' Attorney]:  That's a misstatement of evidence.

"The Court:  The jury will be the decider of the evidence. Go ahead."

Pickens actually testified:  "I was sitting at the bar, me and the owner. Sugar and Gypsy had an altercation. She jumped up at Sugar, said bitch, you want to go. We got in between them, broke it up. Gypsy, she swung at Sugar, struck her first, and we separated them from there." The State concedes the prosecutor erred by getting Pickens' testimony essentially backwards. Thus, the State argued facts not in evidence. See *State v. Tahah*, 293 Kan. 267, 277, 262 P.3d 1045 (2011) ("It is fundamental that prosecutors must not argue facts not in evidence."). Therefore, we must determine whether the comment denied Thomas a fair trial.

14

Under a *Tosh* analysis—i.e., grossness, flagrancy, and ill will—the record reflects the prosecutor did not repeat, dwell on, or emphasize the misstatement or disregard a ruling. Instead, Thomas objected and the State promptly moved on to the rest of its argument. This was clearly an isolated occurrence.

Further, the record does not support a finding that the comment was made with ill will. Pickens' testimony referred to the defendant and victim by their stage names—Sugar and Gypsy. We think it understandable if the prosecutor simply confused the parties. Moreover, the court instructed the jury that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." And after the prosecutor made the misstatement, the judge again reminded the jury it was the "decider of the evidence." See *State v. Huddleston*, 298 Kan. 941, 956, 318 P.3d 140 (2014) ("[T]he trial court instructed the jury that it was to base its decision on the law and the facts, and nothing suggests the jury did not follow that admonition. Although these instructions do not give the prosecutor a free pass on misconduct, they are appropriate considerations when evaluating whether a jury was misled."). Accordingly, applying *Tosh*, we find the error was harmless.

Under *Sherman*, we have moved away from considering the prosecutor's motivation or intent and now focus exclusively on the error's impact on the verdict. See *Sherman*, 305 Kan. at 111 ("The focus of the inquiry is on the impact of the error on the verdict."). "[C]onsider[ing] any and all alleged indicators of prejudice," we must determine whether the State has met its burden to show that there is no reasonable possibility that the error contributed to the verdict. 305 Kan. at 111.

We conclude the error was harmless beyond a reasonable doubt. First, Pickens' testimony did not directly concern the aggravated battery itself. Pickens admitted at trial

15

that he did not see the fight during which Borntrager suffered the stiletto-inflicted wound. Second, defense counsel clarified Pickens' testimony following the misstatement:

"[Borntrager] wants you to believe that she did nothing wrong in this. That she's an innocent party, that she did nothing wrong. Well, if she did nothing wrong, why would anybody ever say that she went up there and said words, like [Pickens] came in and what [Pickens] testified to. He said Traci said let the bitch go. Let's go."

These factors, along with the district court's instruction to the jury that it should disregard any statement not supported by the evidence, lead us to conclude the prosecutor's misstatement of fact did not have any effect on the verdict.

*Cumulative error did not deprive Thomas of a fair trial.*

Thomas' final claim of trial error is that the cumulative effect of trial errors deprived her of a fair trial. "But if there is no error or only a single error, cumulative error does not supply a basis for reversal." *State v. Love*, 305 Kan. 716, 737, 387 P.3d 820 (2017). Since the only error we can discern is the prosecutor's misstatement of the evidence, there are not multiple errors to cumulate.

As such, we affirm Thomas' conviction for aggravated battery.

*The Court of Appeals improperly remanded the case to the district court for resentencing.*

Having disposed of Thomas' alleged trial errors, we take up the remand dictated by the Court of Appeals in order for the district court to make a deadly weapon finding.

At the time of Thomas' offense, KORA defined a violent offender as "any person who . . . on or after July 1, 2006, is convicted of any person felony and the court makes a finding on the record that a deadly weapon was used in the commission of such person

16

felony." K.S.A. 2011 Supp. 22-4902(e)(2). On November 7, 2012—the date the jury found Thomas guilty and the district court approved the verdict—K.S.A. 2012 Supp. 22-4904(a)(1)(A) directed the court "[a]t the time of conviction or adjudication for an offense requiring registration . . . the court shall . . . [i]nform any offender, on the record, of the procedure to register and the requirements of K.S.A. 22-4905 . . .". Prior to July 1, 2012, courts were directed to do so at the "time of sentencing or disposition." L. 2012, ch. 149, § 3.

Nonetheless, the district court did not inform Thomas of her duty to register on the date of her conviction. At sentencing, the court told Thomas she had a duty to register under KORA. At no time in any of the proceedings did the district court make a finding on the record that a deadly weapon was used in the commission of the crime. The journal entry of judgment makes no mention of Thomas' duty to register. The Court of Appeals held that the district court's failure to make a deadly weapon finding meant she could not be required to register, so it "vacate[d] that portion of Thomas' sentence . . . and remand[ed] this matter to the district court" so that it could make a finding that the shoe was a deadly weapon. *Thomas*, 2014 WL 3020029, at *12.

Thomas agrees with the Court of Appeals that the district court was required by KORA to make an explicit finding on the record that a deadly weapon was used in the commission of the crime in order to trigger a duty to register as a violent offender. The State did not cross-petition the panel's ruling, so this issue is not properly before us. See Supreme Court Rule 8.03(h)(1) (2018 Kan. S. Ct. R. 56) ("If review is not limited, the issues before the Supreme Court include all issues properly before the Court of Appeals which the petition for review or cross-petition allege were decided erroneously by the Court of Appeals."); see also *In re Care & Treatment of Ellison*, 305 Kan. 519, 525-26, 385 P.3d 15 (2016).

17

The only issue before us is whether the Court of Appeals' remand was proper. Thomas argues that once her conviction and sentence are affirmed, there is nothing left of the case to "remand" to the district court. Her argument presumes that registration is not part of a sentence. Implicitly, the Court of Appeals considered registration to be part of the criminal sentence. If the lower court is correct, it makes sense to conclude that if a registration requirement is vacated, a remand is theoretically required for resentencing. See *State v. Dickey*, 305 Kan. 217, 222, 380 P.3d 230 (2016) (vacating and remanding for resentencing an illegal sentence that was premised on an erroneous criminal history score).

In *State v. Simmons*, 50 Kan. App. 2d 448, 329 P.3d 523 (2014), a different panel of the Court of Appeals attempted to answer this question. The *Simmons* panel construed KORA's statutory scheme as a whole and held "that the legislature intended the KORA registration requirements to be imposed automatically by operation of law without court involvement and to represent nonpunitive collateral consequences of judgment that are distinct from, and not a part of, a criminal sentence." 50 Kan. App. 2d at 463. In *Marinelli*, we dissected the *Simmons* panel's determination that the registration requirements are *always* imposed automatically without judicial intervention, concluding the panel painted with too broad of a brush. *Marinelli*, 307 Kan. at ____, slip op. at 21.

We held in *Marinelli* that there are actually distinct sources of the obligation to register in KORA. Sometimes no judicial intervention is necessary at all. For example, KORA describes circumstances in which a mere conviction is sufficient to render an individual an "offender." See *Marinelli*, 307 Kan. at ____, slip op. at 21-22; see also K.S.A. 2017 Supp. 22-4902(a) (defining an offender in part as a sex offender; violent offender; drug offender); K.S.A. 2017 Supp. 22-4902(b)(4), (c) (listing crimes that qualify an individual as a sex offender); K.S.A. 2017 Supp. 22-4902(e) (listing crimes that qualify an individual as a violent offender); K.S.A. 2017 Supp. 22-4902(f) (listing crimes that qualify an individual as a drug offender).

18

In other instances, a judge must make a finding of fact, and that finding, along with the conviction, triggers the duty to register. See K.S.A. 2017 Supp. 22-4902(e)(2) (defining "violent offender" as person convicted of person felony and court makes finding on the record that a deadly weapon was used in the commission of the person felony); K.S.A. 2017 Supp. 22-4902(c)(18) (defining "sexually violent crime" as any act determined beyond a reasonable doubt to have been sexually motivated unless the court, on the record, finds the act involved nonforcible sexual conduct, the victim was at least 14, and the offender was not more than 4 years older than victim); K.S.A. 2017 Supp. 22-4902(b)(3), (d) (providing an individual qualifies as a sex offender if he or she has been determined to be a sexually violent predator). And sometimes a judicial finding of fact may remove an otherwise automatic duty to register. See K.S.A. 2017 Supp. 22-4902(b)(2) (defining "sex offender" to include juveniles adjudicated of a registrable offense unless court finds on the record the act involved nonforcible conduct, victim was at least 14, and offender was not more than 4 years older than victim).

In a third set of circumstances, the obligation to register arises out of a district court's "exercise of discretion" to order registration. See *Marinelli*, 307 Kan. at ____, slip op. at 21-23. See K.S.A. 2017 Supp. 22-4906(f), (g); K.S.A. 2017 Supp. 22-4902(a)(5); K.S.A. 2017 Supp. 22-4906(a)(1)(M).

Once one of these sets of statutorily defined conditions exists—i.e., (1) the mere fact of a conviction classifies the defendant as an "offender"; (2) the fact of a conviction plus some statutorily permitted judicial fact-finding classifies the defendant as an "offender"; or (3) a judicial order determines, through the exercise of judicial discretion, that the defendant should be considered an "offender"— KORA creates a "springing" obligation—that is, the duty to register under KORA springs into existence by operation of law. When the statutorily described conditions precedent do not exist, there is and can be no duty to register.

19

In Thomas' case, the springing registration obligation alleged by the State is triggered when two statutorily prescribed conditions precedent exist: (1) a personal felony conviction; and (2) a factual finding on the record by the convicting court that a deadly weapon was used in the commission of the crime. See K.S.A. 2011 Supp. 22-4902(e)(2). As already stated, when the classification of a defendant as an "offender" requires district court fact-finding, as here, that fact-finding is itself one of the statutorily defined conditions precedent. Without such a fact-finding, the defendant cannot be an offender under KORA, and the obligation to register never springs into existence.

Moreover, the failure to make such a finding cannot be characterized as a "sentencing error." Rather, the registration obligation that the State alleges simply never materialized in this case. Once the case is appealed and the appeal is docketed, the district court loses jurisdiction. *State v. Fritz*, 299 Kan. 153, 155, 321 P.3d 763 (2014). And once the conviction and sentence are affirmed on appeal, the opportunity to generate the necessary conditions precedent to trigger a springing duty to register is extinguished. A remand in these circumstances amounts to giving the State a judicially created second bite at the registration apple—something that is wholly inconsistent with the springing character of the registration requirement at issue in this case.

The State argues that absent an objection below, we should presume the district court made the deadly weapon finding. It also argues the court can consider remand if meaningful appellate review is precluded. It relies on language from *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, 952 P.2d 1286 (1998), where a litigant challenged an order quashing a subpoena, but did not raise the challenge in the district court. The record did not contain the district court's rationale for quashing the subpoena. The court held the litigant failed to demonstrate the district court abused its discretion, noting an appellant "has the burden to designate a record sufficient to establish the claimed error." 263 Kan. at 706. It also noted:

"[A] litigant must object to inadequate findings of fact and conclusions of law in order to give the trial court an opportunity to correct them. In the absence of an objection, omissions in findings will not be considered on appeal. Where there has been no such objection, the trial court is presumed to have found all facts necessary to support the judgment." 263 Kan. at 706.

This case is factually distinguishable. The State argues the registration requirement is valid under K.S.A. 2011 Supp. 22-4902(e)(2). That provision's plain language requires that "the court [make] a finding on the record that a deadly weapon was used . . . ." The record does not contain that finding. The judicially made rule that a court presumes necessary fact-finding cannot fill the void left by the district court's failure to meet the statutory requirement in Thomas' case. "'The plain language selected by the legislature, when it does not conflict with constitutional mandates, *trumps both judicial decisions and the policies advocated by the parties*.'" *State v. Spencer Gifts,* 304 Kan. 755, 761, 374 P.3d 680 (2016).

For the same reason, the absent finding does not frustrate meaningful appellate review because its very absence is fatal to the registration obligation under the State's proffered justification for it. Thomas has, therefore, met her burden of designating a record sufficient to establish that no duty to register exists.

Since the duty to register under KORA springs into existence by operation of law immediately upon the existence of statutorily prescribed conditions, it is not within or part of a criminal sentence. Given this, the absence of a court-made finding on the record that Thomas used a deadly weapon cannot be a sentencing error amenable to the remedy of a remand. Such an absence is not error at all—K.S.A. 2011 Supp. 22-4902(e)(2) does not affirmatively require the district court to consider and determine whether Thomas used a deadly weapon in the commission of her offense. The error here—an error of law—was the district court's declaration that Thomas is required to register. The absence

of statutorily defined conditions precedent which would give rise to a duty to register is merely proof of that error. Therefore, the Court of Appeals is reversed only insofar as it improperly prolonged these proceedings. The remand order is vacated.

Affirmed in part and reversed in part.

* * *

ROSEN, J., concurring and dissenting: I agree with the majority that this case need not be remanded to the district court; however, I dissent from the portion of the majority's opinion interpreting the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq., as it applies to this case. I disagree with the majority's underlying position that KORA is not a sentencing statute that increases the punishment for designated convictions. See *State v. Marinelli*, 307 Kan. ___, ___ P.3d ___ No. 111,227, this day decided, slip op. at 30-35 (Rosen, J., concurring). In my opinion, this erroneous interpretation leads the majority down a rabbit hole with unfortunate outcomes, such as the "springing obligation" theory that mandates registration upon conviction by operation of law. Slip op. at 19. I agree with Justice Johnson's critique of the majority's interpretation and with the rationale set forth in his concurring opinion that also concludes that KORA registration is a part of sentencing. I now turn my attention to another aspect of the Act.

Broadly stated, KORA requires certain defined offenders to register. K.S.A. 2017 Supp. 22-4902(e)(2) provides that one such type of offender is a person who "is convicted of any person felony and the court makes a finding on the record that a deadly weapon was used in the commission of such person felony." In *State v. Charles*, 304 Kan. 158, 176-77, 372 P.3d 1109 (2016), *abrogated by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017), the majority noted:

22

"If KORA registration does not constitute punishment for purposes of the Due Process Clause of the Fourteenth Amendment, then *Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)] does not apply. If it does constitute punishment under that clause, then *Apprendi* applies and the Sixth Amendment demands that all factfinding in support of a registration requirement must be done by a jury, not a judge. See *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 2161, 186 L. Ed. 2d 314 (2013); *Apprendi*, 530 U.S. at 490."

Because, in my view, KORA registration qualifies as punishment, under the Due Process Clause, any finding of fact required to impose registration requirements must be made by a jury. The provision in K.S.A. 2017 Supp. 22-4902(e)(2) that allows a judge-made finding that a deadly weapon was used in a crime to trigger the requirement of registration under KORA, therefore, violates due process and is unconstitutional. See *State v. Soto*, 299 Kan. 102, 124, 322 P.3d 334 (2014) (concluding statutory procedure for imposing hard 50 sentence violates Sixth Amendment because it permits judge to find by a preponderance of evidence one or more aggravating factors necessary to impose increased mandatory minimum sentence, rather than requiring jury to find existence of aggravating factors beyond reasonable doubt); *United States v. Haymond*, 869 F.3d 1153, 1160 (10th Cir. 2017) (18 U.S.C. § 3583[k] unconstitutional because it changes mandatory sentencing range to which defendant may be subjected, based on facts found by judge, not by jury). But see *State v. Hachmeister*, 306 Kan. 630, 639, 395 P.3d 833 (2017) (lifetime sex offender registration not punishment). I note that other provisions of the Act are subject to the same infirmity, but they do not bear upon the issue of remand in this case so I leave their consideration to another day.

Because there was no cross-petition filed by the State, that portion of the Court of Appeals order which held the deadly weapon finding necessary to trigger the registration requirement is not directly before us. The question before the court is only whether the Court of Appeals could order a remand for the deadly weapon finding to be made by the district judge in order to trigger the registration requirement. Since, in my view, it would

23

be unconstitutional for the district judge to require registration based on a judge-made deadly weapon finding, remand is neither required nor appropriate. See *State v. Bonner*, 290 Kan. 290, 303, 227 P.3d 1 (2010) (no purpose served by remand to consider sentencing option that no longer exists).

BEIER and JOHNSON, JJ., join in the foregoing concurrence and dissent.

* * *

JOHNSON, J., concurring: I concur in the result reached by the majority. I write separately to challenge the majority's newly manufactured "springing obligation" theory that it uses to support the notion that Thomas' purported KORA registration obligation was not imposed in the criminal case by the sentencing judge as part of her criminal sentence.

I begin by agreeing with the majority's penultimate holding that the failure of the district court to make a finding on the record that a deadly weapon was used in the commission of the aggravated battery meant that Thomas could not be required to register under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. In that vein, the district court simply did not have the statutory authority to order that Thomas was required to register when it pronounced Thomas' sentence from the bench. That unlawful pronouncement is analogous to a district court ordering from the bench at sentencing that a person convicted of an off-grid felony must serve a term of postrelease supervision, when postrelease supervision is not statutorily authorized. See, e.g., *State v. Clark*, 298 Kan. 843, 851, 317 P.3d 776 (2014) (sentencing court not authorized to order term of postrelease supervision in conjunction with off-grid indeterminate sentence). But contrary to the majority, I would view the district court's unlawful order at sentencing as fitting within the definition of an illegal sentence. See K.S.A. 2017 Supp. 22-3504(3)

24

("'Illegal sentence' means a sentence . . . that does not conform to the applicable statutory provision, either in character or punishment.").

I also concur with the majority's ultimate decision not to remand this case to the district court, albeit for another reason. The majority reads our decision in *State v. Dickey*, 305 Kan. 217, 222, 380 P.3d 230 (2016), as creating a theoretical requirement to remand for resentencing any time a registration requirement is vacated, if the registration requirement were to be considered part of the criminal sentence. Slip op. at 18. Although the majority believes that conclusion "makes sense," I do not. Moreover, we need not avoid labeling registration as a part of Thomas' sentence in order to avoid remanding to the district court.

We have precedent, alluded to above, that directly supports our vacating the unauthorized part of a sentence, without the district court engaging in a resentencing. See *State v. Cash*, 293 Kan. 326, 330-31, 263 P.3d 786 (2011) (simply vacating the portion of sentence imposing lifetime postrelease supervision for an off-grid conviction). Here, the sentencing journal entry did not purport to require Thomas to register and, therefore, it was not legally infirm. Only the sentencing court's pronouncement from the bench was erroneous. Although the above-cited *Clark* case ultimately remanded the matter to the district court to correct by nunc pro tunc order the sentencing journal entry, it specifically held that when

> "the sentencing court erred in imposing lifetime postrelease supervision from the bench, that portion of [the defendant's sentence] is vacated. See *State v. Floyd*, 296 Kan. 685, 690-91, 294 P.3d 318 (2013) (holding remedy when postrelease supervision is announced from the bench is to vacate that portion of the sentence); *State v. Ross*, 295 Kan. 1126, 1134, 289 P.3d 76 (2012) (same); [*State v.*] *Summers*, 293 Kan. [819,] 831-32[, 272 P.3d 1 (2012)] (same)." 298 Kan. at 851.

25

The district court in *Clark* was not directed to engage in any resentencing, but rather to simply correct a faulty journal entry. Here, we do not even need a nunc pro tunc correction of Thomas' sentencing journal entry, because it is legal. We simply vacate the unlawful pronouncement; no remand, yet no registration requirement.

But the majority apparently has a compelling desire to find that KORA registration is not part of the criminal sentencing, apart from the remand question. The majority first points out that in *State v. Simmons*, 50 Kan. App. 2d 448, 463, 329 P.3d 523 (2014), the Court of Appeals held "that the legislature intended the KORA registration requirements to be imposed automatically by operation of law without court involvement and to represent nonpunitive collateral consequences of judgment that are distinct from, and not a part of, a criminal sentence." But then a cursory look at the actual provisions of KORA blew that theory out of the water. Slip op. at 18-19.

As the majority points out, in many cases, such as the one before us now, court involvement is very much required, because without the requisite judicial fact-finding, no registration requirement arises. And the Legislature did not compel the district courts to make the requisite registration-triggering findings of fact, even where, as here, the jury had found the existence of that fact beyond a reasonable doubt. In the majority's own words, "K.S.A. 2011 Supp. 22-4902(e)(2) does not affirmatively require the district court to consider and determine whether Thomas used a deadly weapon in the commission of her offense." Slip op. at 21. In other words, the judge presiding over the criminal case has the discretion to make the finding, or not. In that circumstance, the registration requirement arises by operation of judicial discretion, not by operation of law.

Even more compelling evidence that the Legislature did not intend for registration to be self-executing, without court involvement, is the definition of "offender" in K.S.A. 2017 Supp. 22-4902(a)(5): "any person required by court order to register for an offense not otherwise required as provided in the Kansas offender registration act." See also

26

K.S.A. 2017 Supp. 22-4906(a)(1)(M) (imposing a 15-year registration period on any person required by *court order* to register after conviction for an offense not otherwise required by KORA). In short, the Legislature has invested the district court with the discretionary authority to decide if any person should be ordered to register, as a result of a non-KORA *conviction*, i.e., to sentence any convicted person to register. Such an unfettered discretionary judicial act is the antithesis of arising by operation of law.

After realizing that the *Simmons* declaration could not be squared with the actual provisions of KORA, the majority's next step was to point at K.S.A. 2017 Supp. 22-4904(a)(1)(B) as definitive evidence that registration could not be part of the criminal sentencing. See *State v. Marinelli*, 307 Kan. ___, ___ P.3d ___ (No. 111,227, this day decided), slip op. at 24. The argument is that a convicted person, released before sentencing, automatically incurs the obligation to register and he or she can be prosecuted for the crime of failing to register, all before being sentenced for the current crime. Ergo, registration cannot be part of the current sentencing because it was already triggered by the conviction. That argument evanesces upon closer scrutiny of the statutory provisions. K.S.A. 2017 Supp. 22-4904 provides as follows, with emphasis added:

"(a)(1) At the time of conviction or adjudication for an offense requiring registration as provided in K.S.A. 22-4902, and amendments thereto, *the court shall*:

(A) Inform any offender, on the record, of the procedure to register and the requirements of K.S.A. 22-4905, and amendments thereto; and

(B) if the offender is released:

(i) Complete a notice of duty to register, which shall include title and statute number of conviction or adjudication, date of conviction or adjudication, case number, county of conviction or adjudication, and the following offender information:  Name, address, date of birth, social security number, race, ethnicity and gender;

27

(ii) require the offender to read and sign the notice of duty to register, which shall include a statement that the requirements provided in this subsection have been explained to the offender;

(iii) *order the offender to report within three business days* to the registering law enforcement agency in the county or tribal land of conviction or adjudication and to the registering law enforcement agency in any place where the offender resides, maintains employment or attends school, to complete the registration form with all information and any updated information required for registration as provided in K.S.A. 22-4907, and amendments thereto; and

(iv) provide one copy of the notice of duty to register to the offender and, within three business days, send a copy of the form to the law enforcement agency having initial jurisdiction and to the Kansas bureau of investigation.

(2) At the time of sentencing or disposition for an offense requiring registration as provided in K.S.A. 22-4902, and amendments thereto, the court shall ensure the age of the victim is documented in the journal entry of conviction or adjudication.

(3) Upon commitment for control, care and treatment by the Kansas department for aging and disability services pursuant to K.S.A. 59-29a07, and amendments thereto, the court shall notify the registering law enforcement agency of the county where the offender resides during commitment of such offender's commitment. Such notice shall be prepared by the office of the attorney general for transmittal by the court by electronic means, including by fax or e-mail."

The first thing to notice is that K.S.A. 2017 Supp. 22-4904(a)(1)(B) comes into play only after the defendant has been convicted of a qualifying offense and "is released." The triggered-by-conviction theorists would interpret "is released" as including a convicted person who bonds out of jail while awaiting sentencing. Cf. K.S.A. 2011 Supp. 22-4904(a)(2) (which applied only "if the offender [was] released on probation, receiv[ed] a suspended sentence, sentenced to community corrections or released on postrelease supervision"). But even if "is released" includes bonding out of jail before

28

sentencing, the registration event is the *release*, not the conviction. Those that do not bond out after conviction will not incur the obligation to register until sometime later, after sentencing.

Even more compelling, reading all of the words of the statute together, as jurists should always do, reveals that "the court shall . . . order the offender to report within three business days . . . ." K.S.A. 2017 Supp. 22-4904(a)(1)(B)(iii). The *court shall order*. There is no operation of law to be discerned in that explicit language. It is not the conviction that imposes an immediate registration obligation on a person; it is the order of the judge presiding over the criminal case upon the person's release from custody.

Furthermore, the K.S.A. 2017 Supp. 22-4904(a)(1)(B) proponents exclaim that the fact that a defendant released prior to sentencing can be prosecuted for failing to register is proof positive that registration is not part of the criminal sentence. But a majority of this court has said that the prison term imposed for failing to register is simply a sanction against the person for committing a new crime; it is not a part of the calculus of ascertaining punishment for the current crime. Consequently, the fact that a releasee on bond can be prosecuted for committing the new crime of failing to register is no different than saying any person released on bond can be prosecuted for committing any other new crime.

But not to be deterred, the majority came up with a creative theory that would allow it to continue to say that registration is not part of the defendant's criminal sentence, notwithstanding the involvement of the criminal case sentencing judge. Under that new theory, the majority first describes three circumstances under which the duty to register arises (hereafter referred to as circumstance 1, circumstance 2, or circumstance 3 registrants), and then explains:

29

"Once one of these sets of statutorily defined conditions exists—i.e., (1) the mere fact of a conviction classifies the defendant as an 'offender'; (2) the fact of a conviction plus some statutorily permitted judicial fact-finding classifies the defendant as an 'offender'; or (3) a judicial order determines, through the exercise of judicial discretion, that the defendant should be considered an 'offender'—KORA creates a 'springing' obligation—that is, the duty to register under KORA springs into existence by operation of law." Slip op. at 19.

Thereafter, the majority concludes: "Since the duty to register under KORA springs into existence by operation of law immediately upon the existence of statutorily prescribed conditions, it is not within or part of a criminal sentence." Slip op. at 21. If I understand the theory, the majority is saying that for a circumstance 3 registrant, where the sentencing judge exercised his or her unfettered discretion to require registration for a person convicted of a non-KORA person felony, without any statutory criteria or factors to guide the decision, the *court-ordered registration requirement* immediately springs into existence as a *registration required by operation of law*.

This new "springing obligation" theory is apparently cut from whole cloth. The majority does not cite to any other jurisdiction that has discerned such a magical sleight-of-hand transformation from judicial discretion to operation of law. Nor does the majority offer an analog in our State's jurisprudence. Whimsically, one might even observe that the majority does not give so much as a nod of the head to Professor Simes, whose Future Interests hornbook describes "springing interests" in the context of executory interests in real property. Lewis M. Simes, Law of Future Interests 11-12, 25-26 (2d ed. 1966).

Rather, in my view, it appears quite obvious that the majority is working backward, starting with its desired premise that registration is not a part of criminal sentencing and then manipulating legal doctrine to justify that preconceived result. In a blog, Phil Steck opined that "the manipulation of legal doctrine to justify a pre-conceived result" is the very definition of result-oriented jurisprudence. See Phil Steck, *Result-*

*oriented Jurisprudence*, timesunion (Nov. 2, 2010), https://blog.timesunion.com/steck/result-oriented-jurisprudence/68/.

But regardless, it is evident to me that the manufacturers of this new legal widget should recall the current version and take it back to the shop for retooling to fix some obvious bugs in the system. For instance, the majority declares that "[i]n Thomas' case, the springing registration obligation alleged by the State is triggered when two statutorily prescribed conditions precedent exist:  (1) a person felony conviction; and (2) a factual finding on the record by the convicting court that a deadly weapon was used in the commission of the crime." Slip op. at 20. Using the majority's conclusion above, that would mean that "the duty to register under KORA springs into existence by operation of law immediately upon" the deadly weapon factual finding. But what if Thomas is in jail at the time of the factual finding and remains there until the sheriff transports her to the custody of the KDOC to serve a prison term? Thomas would have no duty to register while incarcerated. To the contrary, her duty to register would only "spring up" when she is released from custody. Oops, do we have yet another "statutorily prescribed condition precedent" here? Or perhaps the majority needs to add a "leap-frogging" component to its "springing" theory, i.e., the springing, immediate obligation to register by operation of law subsequently "leap-frogs" into an actual duty to register upon release from prison.

And what about a person imprisoned for life, who never gets out of prison? It seems counterintuitive, at the least, to declare that a person who never has to appear before a law enforcement agency and actually register, has incurred an immediate springing obligation to register. Interpreting KORA as imposing a springing, immediate duty to register on a person who will never actually be required to register strikes me as superfluous, meaningless, and absurd. See *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014) (courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation).

31

And in the face of this logical disconnect, the majority conveniently ignores the factors which would point to registration being part and parcel of the criminal sentence. An obvious indicator that registration is intended to be part of the criminal proceeding is that KORA is contained in K.S.A. 22-4901 et seq., which is part of the Kansas Code of *Criminal* Procedure, K.S.A. 22-2101 et seq., not the Kansas Code of Civil Procedure, K.S.A. 60-101 et seq. Moreover, the criminal court proceeding is the only place the Legislature has established to deal with registration matters. Unlike the administrative procedures in place for an executive branch agency to deal with driver's license suspensions for those who drive under the influence, the Legislature made no provision for handling KORA registration, other than through the criminal court. And there is no sanction for violating the KORA duty to register, other than through a new criminal prosecution, and, accordingly, the criminal courts are the only guardians of the KORA scheme.

Another persuasive indicator that registration is part of the criminal sentence is that the duty is only imposed on persons who have been convicted of a person felony. In the majority's parlance, a criminal conviction is a statutorily prescribed condition precedent to the obligation to register. In contrast, a person who is acquitted of the crime of driving under the influence can nevertheless have his or her driver's license suspended for driving under the influence, because the suspension is truly not part of the criminal sentence. But with respect to KORA, even if every law enforcement officer in the county knows that a particular person is a gun-toting, knife-slashing, violent, incurable pedophile, an obligation to register will only spring up upon a person felony criminal conviction. Further, as the majority acknowledges, for circumstance 2 and circumstance 3 registrants, the judge presiding over the criminal case is the only person or entity that can put into effect the obligation to register under KORA. Again, that scheme is a judge-executed sentence, not an operation-of-law administrative matter.

In short, I would hold that the part of the district court's sentencing pronouncement that ordered Thomas to register under KORA did not conform to the applicable statutory provisions, and, thus, was illegal. I would vacate that part of the pronounced sentence and hold that, pursuant to the lawful sentence reflected in the sentencing journal entry, Thomas is not required to register under KORA.

BEIER and ROSEN, JJ., join in the foregoing concurrence.