NOT DESIGNATED FOR PUBLICATION

No. 122,596

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
MARK L. WILSON, a/k/a DAMION ALLEN.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Opinion filed April 2, 2021. Affirmed.

*Dwight D. Alexander, II*, of The Alexander Law Firm, LLC., of Kansas City, for appellant.

*Jerry C. Edwards*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and MCANANY, S.J.

PER CURIAM: Mark L. Wilson, aka Damion Allen, appeals the denial of his request for an independent examiner and his petition for transitional release under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 2020 Supp. 59-29a01 et seq. Because most of the records in the case are filed under the name of Mark L. Wilson, we will refer to the appellant by that name in this opinion. Wilson claims the district court abused its discretion by failing to appoint an independent examiner and the district court erred in finding there was no probable cause to believe that his mental abnormality or personality disorder had significantly changed to warrant an evidentiary hearing on whether it would be safe to place him in transitional release. After carefully reviewing the record and the arguments of the parties, we affirm the district court's judgment.

1

In 1999, Wilson stipulated to aggravated indecent liberties and aggravated indecent solicitation of a child in juvenile proceedings. In 2002, Wilson was convicted of two counts of aggravated indecent solicitation of a child. In 2006, after a trial, the district court found Wilson to be a sexually violent predator and committed him. Wilson's initial evaluation diagnosed him with pedophilia, schizoaffective disorder, amphetamine dependence, cannabis dependence, alcohol abuse, and antisocial personality disorder. It concluded that Wilson met the criteria to be considered a sexually violent predator.

From 2007 to 2015, Wilson received annual examinations of his condition as required by law and he did not petition for review of the reports' conclusion that he remained a sexually violent predator. In 2016 and 2017, Wilson sought the appointment of counsel and petitioned to be placed in transitional release, but these petitions were ultimately denied by the district court.

In 2018, Wilson's annual review again concluded his condition had not so changed that it would be safe for him to be placed in transitional release. Wilson petitioned for release and for appointment of a qualified expert. The district court found no probable cause to believe Wilson's mental abnormality or personality disorder had significantly changed so that he was safe to be placed in transitional release. Wilson appealed and a panel of this court affirmed the district court's decision. *In re Care and Treatment of Wilson*, No. 120,896, 2019 WL 4891998 (Kan. App. 2019) (unpublished opinion).

Wilson then received his 2019 annual examination, which is the basis of this appeal. The report reflected that Wilson remained on tier one, skills acquisition, of the three-tier program. Wilson applied to advance to tier two but was denied by the review panel because of concerns about "ongoing negative and aggressive behaviors . . . difficulty with change, boundary issues, demanding behavior, argumentative and

disrespectful behavior, and reported sexual fantasies involving LSH staff." The report stated Wilson got into verbal arguments with staff members and on another occasion, Wilson got into a verbal altercation with a peer.

The annual report summarized that Wilson attended classes on boundaries, depression and anxiety, emotion regulation, substance abuse, and the medium risk process group. He did not enroll in elective leisure sessions or attend any open leisure sessions, nor did he enroll in any psycho-education classes. Wilson obtained the highest privilege level in Tier One, known as "purple" or "royal" privilege level, by complying with rule and registration requirements and paperwork, attending 100% of groups and classes, maintaining constant program advancement and hygiene requirements, and room cleanliness. Because of his privilege level, Wilson was eligible for employment within the program. His job required him to clean the day rooms.

As part of the annual examination, Wilson completed actuarial risk assessment instruments. The Static-99R-2003, which estimates the probability that the offender will reoffend, scored Wilson at a "+5" which placed him in the "well above average risk" category. The Sex Offender Treatment Intervention Progression Scale (SOTIPS), which assesses risk and treatment needs for male sexual offenders, scored Wilson at a "14" which placed him in the "moderate" risk category. In the "sexual offense responsibility, sexual interest, sexual risk management, criminal and rule-breaking attitudes, and stage of change" categories, Wilson scored in the "considerable need for improvement" range. When the scores from the Static-99R and the SOTIPS were combined, Wilson scored in the "moderate-high" risk/need category. Wilson continued to suffer from pedophilic disorder, methamphetamine substance use disorder, malingering, and antisocial personality disorder. Wilson's annual report concluded that his condition had not so changed so that it would be safe to place him in transitional release.

3

Despite the negative report, Wilson petitioned for release and for appointment of a qualified expert to conduct an independent examination, and the district court held a hearing on the matter. Wilson did not appear in person but was represented by counsel. The district court denied Wilson's request for an independent evaluation, finding that he needed to complete tier two and tier three of the program before it would be beneficial to have an independent evaluation on whether it would be safe to place him in transitional release and that Wilson still had issues with negativity, boundaries, and respect.

For the annual review hearing, Wilson's counsel presented a statement written by Wilson that stated he had learned "the error of [his] ways," he was not a danger to society nor had he ever been because if he was he would not have been on the highest privilege level, he was not advancing in the program because it "is essentially a popularity contest," "[w]hat's happening here is a waste of time and money and valuable lives," and he would like the chance to prove himself. The district court accepted the recommendation from the annual report and found there was no probable cause to believe that Wilson's mental abnormality or personality disorder had significantly changed so that it would be safe to place him in transitional release. Wilson timely appealed.

*Did the district court abuse its discretion by failing to appoint an independent examiner?*

On appeal, Wilson first claims the district court abused its discretion by failing to appoint an independent examiner for his annual review. Under the KSVPA, a committed person may request that the district court appoint an independent examiner. K.S.A. 2020 Supp. 59-29a08(c). In deciding whether to appoint an examiner, the district court must "consider factors including the person's compliance with institutional requirements and the person's participation in treatment to determine whether the person's progress justifies the costs of an examination." K.S.A. 2020 Supp. 59-29a08(c).

4

In denying Wilson's request for an independent examiner, the district court acknowledged that Wilson is "attempting to work the program" but found he still had some issues with negativity, boundaries, and respect. The district court also pointed out that Wilson needed to complete tier two and tier three before an evaluation on whether he is safe to be placed in transitional release would be beneficial.

Wilson argues that the district court unreasonably denied his request for an independent examiner because he complied with institutional requirements and participated in treatment. In support of his assertion, he cites his royal privilege level and his enrollment in classes. The State counters that the district court reasonably denied Wilson's request for an independent examiner because he had not made sufficient progress to believe that transitional release might be warranted.

The appointment of an independent examiner is discretionary. K.S.A. 2020 Supp. 59-29a08(c). Thus, this court reviews the district court's decision for an abuse of discretion. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011). Judicial discretion is abused if the judicial decision (1) is unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018). The party asserting an abuse of discretion bears the burden of showing abuse. 307 Kan. at 739.

The district court's decision was reasonable. The district court had to consider "whether [Wilson's] progress justifie[d] the costs of an examination." K.S.A. 2020 Supp. 59-29a08(c). Although Wilson had the royal privilege level and completed classes, he remained on tier one of the three tier program and he continued to have behavioral issues. We conclude the district court did not abuse its discretion by failing to appoint an independent examiner. See, e.g., *In re Care & Treatment of Merryfield*, No. 110,529, 2014 WL 2229141, at *4 (Kan. App. 2014) (unpublished opinion) (finding that the

district court reasonably denied petitioner's request for an independent examination when he was only on phase three of the then seven phase treatment program).

*Did the district court err in finding there was no probable cause to believe that Wilson's condition had changed?*

Next, Wilson claims the district court erred when it found there was no probable cause to believe Wilson's mental abnormality or personality disorder had significantly changed so that it would be safe to place him in transitional release. The State counters that there was insufficient evidence to show probable cause because of Wilson's negative and aggressive behavior, his statements about his crimes, and the annual report's findings.

A person committed under the KSVPA must have an examination of his or her mental condition once every year. K.S.A. 2020 Supp. 59-29a08(a). A committed person may then request an annual review hearing and petition for transitional release. K.S.A. 2020 Supp. 59-29a08(b). At the annual review hearing, the committed person has the burden "to show probable cause to believe the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release." K.S.A. 2020 Supp. 59-29a08(d). If the district court previously denied a petition for transitional release because the person's condition had not significantly changed, "then the court shall deny the subsequent petition, unless the petition contains facts upon which a court could find the condition of the petitioner had significantly changed so that a hearing was warranted." K.S.A. 2020 Supp. 59-29a11(a).

Appellate courts apply a de novo standard of review over the district court's decision at an annual review hearing on whether probable cause existed to believe the person's mental abnormality or personality disorder had significantly changed so it would be safe to place the person in transitional release. *In re Care & Treatment of Burch*, 296

6

Kan. 215, 223, 291 P.3d 78 (2012). Because Wilson bears the burden of proof, the court must consider the evidence in the light most favorable to him. 296 Kan. at 225.

Wilson argues on appeal that there was sufficient evidence to show probable cause because he is on the highest privilege level, meaning he has complied with registration and program requirements and has attended all groups and classes. He also asserts that he engaged more in the program in 2019 and tried to change by enrolling in classes related to his problem areas. Wilson asserts that his "abrupt willingness to follow the rules and adhere to the program demonstrates a significant change in his attitudes toward the program . . . and is evidence that his mental abnormality or personality disorder has so changed that it warrants his release into [t]ransitional release."

Even taking the evidence in the light most favorable to Wilson, he fails to show probable cause to believe his mental abnormality or personality disorder had significantly changed so that it would be safe to place him in transitional release. While Wilson is on the highest privilege level and is making progress in the program by taking classes, he is still only on tier one of the three-tier program. He fails to acknowledge the results of the risk assessments, which taken together placed him in "moderate-high" risk/need category. The Static-99R stated that Wilson had a "well above average risk" for reoffending. He also scored in the "considerable need for improvement" for sexual offense responsibility, sexual interest, sexual risk management, criminal and rule-breaking attitudes, and stage of change. He continues to suffer from pedophilic disorder, methamphetamine substance use disorder, malingering, and antisocial personality disorder. Based on the entire record, the district court did not err in denying Wilson's request for transitional release.

Affirmed.