NOT DESIGNATED FOR PUBLICATION

No. 118,987

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID LEE GANT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Opinion filed January 10, 2020. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Kayla Roehler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and POWELL, JJ.

PER CURIAM: This is David Lee Gant's direct appeal of his conviction for rape. Gant engaged in sexual intercourse with an unconscious woman he came across in Kansas City. Gant argues he was not competent to stand trial. He also raises several trial and jury instruction errors for our review. We are unconvinced by his contentions and affirm his conviction.

1

In December 2014, the victim and her sister partied at the Blue Rose bar. The victim drank alcohol, became intoxicated, and later passed out. She woke up the next morning in a strange truck a block from her sister's house. The victim has no memory of what occurred that night.

Because she felt ill and had discovered some white discharge, debris, and grass in her underwear, she sought medical help. At the hospital, a nurse followed the sexual assault protocol. She collected the woman's clothing, collected swab samples from the victim's person, and performed a pelvic examination of the victim. The samples were sent to the Kansas Bureau of Investigation.

The KBI examined the swabs and found seminal fluid. The samples yielded two DNA profiles—one from the victim and the other was from someone unknown. Ultimately, the unknown DNA profile matched Gant's DNA. This information was sent to the Kansas City, Kansas police.

A Kansas City police detective interviewed Gant. Gant, at first, denied having intercourse with the woman, but he later admitted that he had sex with her while she was unconscious.

The State charged Gant with one count of rape.

*We address the following issues that Gant raises*:

- The court erred when it found him competent to stand trial.
- The court erred when it failed to apply K.S.A. 60-456 and allowed a hospital nurse to testify about the cause of the victim's abrasions.
- There was reversible prosecutorial error during closing argument.

- The court erred when it failed to give a limiting instruction about his prior crimes.
- The court erred when it did not give the jury a *M'Naghten* instruction.
- There is cumulative error.

*The court eventually found Gant competent to stand trial.*

Gant first claims that the trial court abused its discretion by finding he was competent to stand trial. He argues his conviction should be reversed. The State contends that Gant was competent to stand trial and the trial court should be affirmed.

A person is incompetent to stand trial when—because of a mental disease or defect—he could not understand the nature and purpose of the proceedings against him or to make or help make his defense. K.S.A. 22-3301(1). This standard agrees with the standard pronounced by the United States Supreme Court, which states that the "'test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 [1960]).

There is a presumption that a defendant is competent to stand trial. *State v. Woods*, 301 Kan. 852, 860, 348 P.3d 583 (2015). The party raising competency as an issue has the burden of providing evidence to prove the defendant is not competent to stand trial. 301 Kan. 852, Syl. ¶ 8. Thus, Gant had the burden to prove to the trial court that he was incompetent. The trial court measures that evidence by a preponderance of the evidence standard. 301 Kan. at 860.

In turn, a trial court's decision about a defendant's competency is reviewed for an abuse of discretion. *Woods*, 301 Kan. at 860. A judicial action constitutes an abuse of discretion if:

- no reasonable person would take the view adopted by the trial court;
- it is based on an error of law; or
- it is based on an error of fact. *Marshall*, 303 Kan. at 445.

An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. See *State v. Collins*, 303 Kan. 472, 477, 362 P.3d 1098 (2015). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

This means that the burden is on Gant to show the court erred. More facts help our analysis of this issue. The record shows that Gant was first found incompetent and then, after treatment at the state hospital, the court held him to be competent to stand trial.

After Gant was charged, the trial court granted Gant's motion for an evaluation to determine his competence to stand trial. The local mental health center complied. The center's findings included a diagnosis of intellectual developmental disorder and an exhibition of below average intellectual functioning. According to the evaluator, Gant exhibited poor insight and judgment. The center concluded that Gant was not competent to stand trial and recommended that he be transferred to the Larned State Hospital for competency restoration.

About the same time, Gant's trial counsel notified the court and the State that Gant intended to pursue a defense of mental disease or defect under K.S.A. 22-3219 and asked the court to order a mental evaluation. Killing two birds with one stone, the court ordered Gant to be committed to Larned State Hospital to determine his competence to stand trial

and to be evaluated to determine whether a mental disease or defect prevented any criminal liability.

Gant was admitted to Larned State Hospital in October 2015. The resulting forensic report concluded that he was not competent to stand trial. After a hearing on the matter, the court ruled he was incompetent and ordered him to return to the state hospital for help in restoring his competence.

Ultimately, in September 2016, a second forensic report to the court suggested that Gant was competent to stand trial. The report revealed details from two forensic interviews with Gant that showed his improvement. In the first interview, conducted in June 2016, he displayed an inadequate understanding of the legal proceedings. But in the September 2016 interview, Gant could accurately answer most of the questions asked of him.

As for his competence, the court found that Gant understood the charge against him and the possible sentence. Despite the finding of intellectual disability in his evaluations, the court found that Gant liked his attorney and could work effectively with his defense counsel and assist in his defense. The court ruled he was competent to stand trial.

The parties engaged in brief plea negotiations and Gant pled guilty, but he later withdrew the plea when he disagreed with the State's factual allegations.

To us, Gant argues that he could not understand the nature of the proceedings against him and could not help make a defense. He relies on several points. First, he did not understand his preliminary hearing date was not his trial date until the court explained the nature of a preliminary hearing to him. Next, when the trial started, he was confused over his potential sentence and spoke of a "10-month policy." Then, during a single

hearing, he went from wanting a court trial—to pleading guilty—back to wanting a jury trial.

Gant argues those incidents show his confusion and that he could not assist his attorney when he told a different story than what he had told the detective. In this version, he encountered a woman while he was drunk and walking down the street. After sharing some drinks with her, he passed out only to awaken the following day next to a black truck with his pants down.

He points out that during the trial, Gant's counsel had told the judge that Gant was unaware that the State would put on evidence against him. He thought the case would be put before the court with his statement to the police, the victim's statement, the DNA evidence, and then Gant's side of the story. Gant kept calling the jurors witnesses but then said they were to decide that he "'didn't do it or I did do it.'"

To us, Gant argues his low test scores, placing him in the low range of intelligence, and poor scores for the Competence Assessment for Standing Trial for Defendants with Mental Retardation demonstrate his lack of competence. At sentencing, his trial counsel expressed doubt about the accuracy of the forensic report finding Gant competent.

Gant asks us to reverse the trial court's finding that he was competent to stand trial. The burden is on Gant to show that he was incompetent. See *Woods*, 301 Kan. 852, Syl. ¶ 8. He offers no new evidence other than his behavior at trial. That is not enough to compel us to reverse the trial judge who observed Gant and conducted all the proceedings. This was not a spur of the moment decision by the trial court.

The judge spent a long time speaking with Gant. The court talked with him about possible pleas and sentences. The record reveals that when Gant was questioned, using

6

simple terms and checking for his understanding—as recommended by the forensic report—Gant understood that the detective and the victim would testify; that he planned to testify; and he understood the purpose of his trial, the prosecutor's role, the role of his defense attorney, and the roles of the judge and jury.

After all these discussions on the record, the court saw no reason to ignore the forensic report suggesting Gant's competence was restored. Given our standard of review, we cannot say the court abused its discretion.

*Allowing the nurse to testify about abrasions was not an abuse of discretion.*

Gant contends that the trial court abused its discretion when it failed to apply K.S.A. 2018 Supp. 60-456(b) to the forensic nurse's testimony. Gant claims it was erroneous for the court to allow the nurse to testify about what may have caused the victim's abrasions. Gant contends that statute prevented the admission of that testimony.

The State argues that Gant did not preserve the issue because he failed to properly object. Gant only objected to the nurse's lack of "forensic background to show causality based on the injuries that are purported to be received." This specific objection is to her knowledge and education—not the method in arriving at her opinion. In his reply brief, Gant argues the State reads the objection too narrowly and it extends to the methods by which she arrived at her opinion and thus, the issue is preserved. We will deal with the objection.

To aid in our analysis, a brief synopsis of the nurse's trial testimony is helpful. After talking about the abrasions she had noted on the victim, the State asked the nurse, based on her training and experience, what caused the abrasions. Gant objected because there was no foundation for such an opinion. The court overruled the objection and the testimony was admitted. The nurse then testified that based on the clothing and the

pictures of the victim's upper back and buttocks, it looked like the victim had been dragged. She admitted during follow-up questions that she could not be certain but formed her answer upon what she had seen.

Gant bases his argument on K.S.A. 60-456(b), which controls the admission of expert opinion testimony. In his view, there was no foundation testimony given to admit this opinion. The statute lists three requirements:

- To be admissible, such opinions must be based on sufficient facts or data—subsection (b)(1);
- the testimony is based on reliable principles and methods—subsection (b)(2);
- the witness has reliably applied the principles and methods to the facts of the case—subsection (b)(3).

The nurse noted no facts or data other than what she saw and did in examining the victim. There was no testimony of reliable principles and methods, so the nurse could not have applied any principles and methods to these facts. Simply put, the nurse stated that based on the clothing and the pictures of the victim's upper back and buttocks, it looked like the victim had been dragged.

Gant also argues that the nurse's opinion would not be admissible as a nonexpert opinion under K.S.A. 60-456(a). Gant has incorporated all three subsections of this statute into his argument. But it does not matter.

This is not the specific objection Gant made at the trial. He only objected to the lack of foundation for the admission of an expert opinion. A party cannot object to the introduction of evidence on one ground at trial and assert another ground on appeal. *State v. Reed*, 300 Kan. 494, 505-06, 332 P.3d 72 (2014). We will not consider this argument.

8

When we examine this record closely, we do not think that the nurse's testimony is an expert opinion. The nurse did not offer this opinion based on her training, education, and experience as a nurse. Instead, she based her opinion upon the condition of the victim's clothing and the pictures of the victim's back. With the foundation of her remarks being so common, the nurse was just a witness, not an expert witness when she answered as she did. She was in no different position than the jurors were when they viewed the victim's clothing and the pictures of her body. The jury saw at least 40 photos taken by the nurse to document her examination. Many showed the abrasions she testified to. At this point, the nurse was testifying as a lay witness and not an expert.

The nurse could testify about what she saw and did. She followed her training and completed the sexual assault protocol. She saw the victim's clothing and the grass and gravel found on the drop cloth on which the victim stood as she undressed during the examination. She noted the scratches on the victim and the state of her clothing. The victim had mud on the back of her white tank top she was wearing and the black t-shirt she wore over it. She performed a pelvic examination of the victim, noting any injuries.

We also question the significance of the nurse's opinion about whether the victim was dragged if we consider all of the trial evidence. After all, semen was found inside the victim. That semen contained Gant's DNA. The victim was unconscious. And Gant admitted to the detective that he had engaged in intercourse with her while she was unconscious. There is no reasonable probability that this claimed error affected the trial's outcome. See *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

*We are not convinced the prosecutor's statements prejudiced Gant.*

Gant claims the State committed prosecutorial error by misstating portions of the victim's testimony and the nurse's testimony in its closing argument. He argues this court should reverse his conviction. The State contends that it permissibly used the facts and

evidence to craft its argument and did not commit prosecutorial error. The State argues Gant's conviction should be affirmed.

In *State v. Sherman*, 305 Kan. 88, Syl. ¶ 6, 378 P.3d 1060 (2016), the Kansas Supreme Court established a two-step process to evaluate claims of prosecutorial error. Basically, an appellate court is to look first for error and then prejudice:

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109.

Then the reviewing court must look for prejudice:

"If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

A prosecutor must confine his or her remarks to matters in evidence. It is improper for the prosecutor to state facts that are not in evidence. *State v. Stano*, 284 Kan. 126, Syl. ¶ 12, 159 P.3d 931 (2007).

Here are the two comments. The first deals with the actions of the victim when she wakes up after her assault:

"[S]he takes a sweater and a phone from that car because she wants to connect herself to that place. She wouldn't have done that if she didn't feel that she had engaged in a unconsensual encounter."

The second comment concerns the evidence of the victim's physical condition during the forensic medical examination:

"[L]et's look at the hard, scientific, forensic evidence in this case that is uncontrovertible; her bruises, her back, the scratches that are consistent with drag marks. That's not consent."

Gant argues the State distorted the evidence related to the consent issue. First, he claims the comment misstates the victim's testimony about why she took the sweater and cellphone from the truck after she woke up. Then, he asserts the comment misstates the nurse's testimony about the victim's back abrasions. Gant's brief then gives an extensive review of the victim's testimony:

"She stated that she grabbed the sweater and phone before walking away from the truck 'to have proof of where [she] was at, where [she] woke up . . . to track [her] back to where [she] woke up.'"

. . . .

"As can be seen, [the victim's] testimony . . . demonstrates that [she] did not begin to think she had a nonconsensual encounter until after she had returned to [her sister's] home and used the restroom."

When we evaluate a prosecutor's closing arguments, context matters. "Appellate courts consider the prosecutor's comments in the context in which they were made rather than in isolation." *Thomas*, 307 Kan. at 744. A prosecutor is allowed to craft arguments that include reasonable inferences drawn from the evidence. *State v. Stone*, 291 Kan. 13, 19, 237 P.3d 1229 (2010).

11

When we look at a larger portion of the record, we can see that the context ameliorates the perception of misstatement.

> "In the morning, [the victim] wakes up in a truck and she's scared and she feels like something is wrong. Not only is she nauseous, *but she feels like something is very wrong with her body to the extent that she takes a sweater and a phone from that car because she wants to connect herself to that place. She wouldn't have done that if she didn't feel that she had engaged in an unconsensual encounter.* That goes to no consent in this case." (Emphasis added.)

Then we look to the comment about the nurse.

> "But if her testimony is not enough for you, maybe you think, well, she got so drunk, she doesn't know if she consented or not, let's look at *the hard, scientific, forensic evidence* in this case that is uncontrovertible: her bruises, her back, *the scratches that are consistent with drag marks*. That's not consent. That's not a consensual sexual act."

The State argues these passages are examples of using the facts and evidence to draw reasonable inferences from both the victim's and the nurse's testimony to craft its argument about the victim's lack of consent. In other words, the victim would not have taken the phone and sweater to prove where she woke up if she did not believe there was a problem. And the nurse's observation that the victim appeared to have been dragged dovetailed with the dirt and grass in and on her clothing, as well as the vertical abrasions on her back.

From this context, we are convinced these two comments did not fall outside the wide latitude granted for crafting arguments. We hold there is no error here and therefore will not address the second step of the *Sherman* test.

12

*We find no need for a limiting instruction.*

Gant next contends that the trial court erred in failing to provide a limiting jury instruction on evidence of his prior crimes. The State argues that a limiting instruction was unnecessary because no evidence was presented to the jury that would constitute a prior bad act or a civil wrong.

This argument arises from Gant's videotaped statement to the detective that was played for the jury. The detective had stepped out of the room and Gant was alone with the video still recording. During the video, Gant, speaking to himself, says, "That just like a bum fucking felon, a warrant, yeah. I got caught with dope." That is the only evidence that Gant complains about on this point. There are no statements from any other witness, and no exhibits that mentioned any drug convictions.

But Gant does have a Kansas conviction for possession of cocaine and an Arkansas conviction for possession of a controlled substance. Thus, Gant contends his prior convictions were improperly placed before the jury with the admission of this video, even though the convictions were never mentioned in the video. Gant did not object to the admission of the video on this ground, nor did he request a limiting instruction. But since he contends this is clear error, he suggests he did not need to make an objection.

After viewing this video, it is clear that Gant was speaking to himself. He was equating his situation with a person being picked up on a warrant and the police finding dope on the person at the time of the arrest. It is not an admission of prior bad acts; therefore, there was no need to give a limiting instruction.

We note that the trial court conducted a pretrial hearing to decide whether Gant's statements during his interview were voluntary. After the trial court found Gant's confession was valid and the video could be used at trial, the State noted for the record

13

that when Gant was arrested, he believed he was being picked up on warrants and had made references to his warrants several times in his interview. The State told the court that it had redacted all of Gant's references to his warrants in the video to avoid references to his prior bad acts. Defense counsel agreed and stated, "I'm just gonna stand on the Court's ruling at this point for the rest of the statement."

The context of how Gant's statement was recorded and what was said convinces us that the admission of this statement was not clear error.

*Failing to give an insanity instruction was not clearly erroneous.*

Gant contends the trial court erred in failing to instruct the jury to consider the affirmative defense of insanity. He claims the instruction was warranted because he was in special education classes in school and his competency to stand trial was an issue throughout the criminal proceedings.

Gant then shifts his argument and claims that the court should have instructed the jury under the *M'Naghten* test. He claims since K.S.A. 2018 Supp. 21-5209 does not allow this defense, the statute is a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and §18 of the Kansas Constitution Bill of Rights. Gant did not argue this to the trial court. Instead, he contends this is clear error and we should address it.

The State argues that Gant did not preserve this issue for appellate review. Generally, issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Likewise, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Gant acknowledges he did not raise this issue in trial court, but he argues that it falls under a recognized exception to the general rule. Gant claims that this issue should be considered because it is necessary to serve the ends of justice and prevent the denial of fundamental due process rights.

The Kansas Supreme Court has held that when necessary to determine the merits of an action, or "'where the issues cannot be intelligently decided without doing so, the constitutionality of a statute should be decided, even if the parties failed to raise the constitutional question, failed to plead the question, or failed to present the question to the trial court.'" *State v. Sedillos*, 279 Kan. 777, 785, 112 P.3d 854 (2005).

The question of K.S.A. 2018 Supp. 21-5209's constitutionality has already been decided adversely to Gant by our Supreme Court. In *State v. Bethel*, 275 Kan. 456, 473, 66 P.3d 840 (2003), the court found that the Legislature did not abolish the insanity defense; the Legislature redefined it. Under K.S.A. 22-3220, the precursor to K.S.A. 2018 Supp. 21-5209, it was a defense if the defendant—as a result of a mental illness or defect—lacked the mens rea for the crime charged. A defendant was permitted to present expert evidence to that effect. "Due process does not mandate that a State adopt a particular insanity test." *Bethel*, 275 Kan. at 473. See *Leland v. State of Or.,* 343 U.S. 790, 797-99, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952).

The *Bethel* court held that the affirmative insanity defense "is a creature of the 19th century and is not so ingrained in our legal system to constitute a fundamental principle of law," and held that the statute does not violate a defendant's right to due process under the United States or Kansas Constitutions. 275 Kan. at 473.

This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). The Kansas Supreme Court

15

recently revisited this issue in *State v. Kahler*, 307 Kan. at 400-01, 410 P.3d 105 (2018), *cert. granted* 139 S. Ct. 1318 (2019). The court did not reconsider or alter its conclusions and holding from *Bethel*. With no indication that the Supreme Court is departing from its previous position, this court must reject Gant's argument and conclude that the trial court did not clearly err for failing to instruct the jury on legal insanity.

*There are no errors to accumulate.*

Finally, Gant argues that his conviction should be reversed based on the cumulative effect of the errors he has raised on appeal. None of the issues raised by Gant in this appeal constitute errors. Thus, Gant cannot avail himself of the cumulative error doctrine.

Affirmed.