NOT DESIGNATED FOR PUBLICATION

No. 122,746

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ASMAR HAMEEN JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed June 11, 2021. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and BUSER, JJ.

PER CURIAM:  Asmar Hameen Jr. appeals the trial court's denial of his motion to continue his probation violation hearing as well as the trial court's ultimate revocation of his probation. Hameen contends that the trial court's denial of his continuance motion constituted reversible error because he needed the continuance to review certain evidence related to his underlying probation violations. Alternatively, he argues that insufficient evidence supported the trial court's revocation of his probation. Nevertheless, because neither of Hameen's arguments are persuasive, we affirm the trial court's denial of Hameen's continuance motion and revocation of Hameen's probation.

1

On January 1, 2018, J.I.G. entered the backseat of a car in which Hameen was the front passenger and Hameen's friend Joshua Jones was the driver. Hameen and J.I.G. had initially met through a software application where people can buy, sell, and trade items. Through this application, J.I.G. had agreed to meet Hameen in person so he could buy a pair of Hameen's tennis shoes for $135. But when J.I.G. entered the car to complete this transaction, Hameen took J.I.G.'s money and then refused to give J.I.G. the tennis shoes. As a result, a struggle between J.I.G., Hameen, and Jones over the tennis shoes ensued. During this struggle, Jones pointed a gun at J.I.G.'s head before shooting J.I.G. in the left shoulder. Also, during this struggle, Hameen tried to take J.I.G.'s jewelry from his person, resulting in further physical injuries to J.I.G.

Ultimately, J.I.G. managed to leave the car and obtain medical treatment for his life-threatening injuries. Also, although Hameen and Jones fled after J.I.G. left the car, police later found and arrested both. For his role in the struggle over the tennis shoes, the State charged Hameen with one count of aggravated robbery, one count of aggravated assault, and two counts of aggravated battery. Yet, eventually, Hameen entered into a plea agreement with the State. Under this plea agreement, in exchange for Hameen's guilty pleas, the State agreed to do the following: (1) to dismiss one of Hameen's aggravated battery charges; (2) to amend Hameen's aggravated robbery charge to simple robbery; (3) to not charge Hameen with his "criminal misconduct" in two other cases; and (4) to recommend that Hameen serve his standard presumptive Kansas Sentencing Guidelines Act (KSGA) sentence.

Next, after pleading guilty to robbery, aggravated assault, and aggravated battery in accordance with his plea agreement, Hameen moved for a dispositional departure to probation. In his motion, Hameen recognized that because he had a criminal history score of B, his presumed sentence under the KSGA required him to serve prison time. Nonetheless, he argued that the trial court should sentence him to probation instead of prison for the following reasons: (1) because he was only 19 years old when he

committed his underlying crimes; (2) because he was merely an accomplice to Jones; (3) because he was willing to take responsibility for his criminal conduct as an accomplice; (4) because he was willing to seek treatment for his substance abuse problem; and (5) because he was about to become a father.

At his sentencing hearing on March 12, 2019, Hameen repeated the arguments in his written departure motion. The State countered that the trial court should deny Hameen's departure motion because J.I.G. could have "potentially lost [his] life over a pair of [tennis shoes]." Then, as required under Hameen's plea agreement, the State asked the trial court to impose Hameen's standard presumptive prison sentence under the KSGA, which was 120 months' imprisonment. In the end, however, the trial court granted Hameen's motion for a dispositional departure to probation based on Hameen's youth when he committed his underlying crimes. It then sentenced Hameen to a controlling term of 36 months' probation with an underlying controlling term of 120 months' imprisonment followed by 24 months' postrelease supervision. Still, when granting his dispositional departure motion, the trial court explicitly warned Hameen that should he violate the conditions of his probation, it would likely revoke his probation because of the severity of his underlying crimes.

But less than a month later, on March 21, 2019, Hameen committed his first probation violation by consuming alcohol. Because Hameen stipulated to his violation, the trial court imposed a 48-hour jail sanction upon Hameen.

Then, after Hameen completed his 48-hour jail sanction, Hameen entered drug treatment. Significantly, one condition of Hameen's probation was that he complete a drug treatment program. Nonetheless, on May 7, 2019, the drug treatment facility discharged Hameen from its program because Hameen had been arguing with staff. The next day, upon Hameen's probation officer's request, the trial court issued a bench

warrant for Hameen's arrest because Hameen's early discharge from the drug treatment program appeared to be a violation of his probation conditions.

Yet, Hameen was not immediately arrested on this warrant. Instead, Hameen was not arrested until after he allegedly committed three new crimes—larceny, counterfeiting, and felon in possession of a firearm—on May 25, 2019. Hameen's alleged new crimes involved his encounter with a woman named Shawnee Gibbs. According to Gibbs, Hameen handed her $425 in counterfeit money in exchange for her pink-camouflage Ruger 9 millimeter handgun. Of note, Gibbs alleged that Hameen had contacted her about buying her handgun after she listed it on a website where people can buy, sell, and trade firearms. In any event, once Hameen had been arrested for these new crimes, Hameen's probation officer requested that the trial court issue a bench warrant for Hameen's arrest based on his apparent commission of new crimes contrary to the conditions of his probation. Afterwards, the trial court issued this bench warrant and scheduled a hearing on all of Hameen's alleged probation violations for July 1, 2019.

Although Hameen had previously been represented by an appointed attorney because of his indigency, following his latest arrest, Hameen hired an attorney. Over the next several months, Hameen's hired attorney requested five probation violation hearing continuances on Hameen's behalf. Then, on January 24, 2020, Hameen's hired attorney moved to withdraw as counsel because of an undisclosed conflict with Hameen. As a result, after the trial court granted Hameen's hired attorney's motion to withdraw, the trial court once again appointed an attorney to represent Hameen. When this reappointment occurred on January 24, 2020, the trial court also rescheduled Hameen's probation violation hearing to February 28, 2020.

But at the outset of Hameen's rescheduled probation violation hearing on February 28, 2020, Hameen's newly appointed attorney moved for another continuance on Hameen's behalf. In making this motion, Hameen's attorney told the trial court that

4

Hameen was entitled to a continuance because he had not seen all the State's evidence related to the new crimes he had allegedly committed while on probation:

> "Judge, as I notified the Court yesterday and the State that we are requesting a continuance of today's hearing. After speaking with Mr. Hameen in the jail a couple of days ago, and then also again yesterday afternoon, he has not had an opportunity to receive a redacted copy of the reports in this case. I let him look at the three police reports—narrative reports I should say . . . [because] the rest of the information would have to be redacted for him to view it. He has seen the four photographs that I have in my discovery.
>
> "I will say . . . there is some other discovery referenced in the reports that Mr. Edwards told me he doesn't have. So I don't have that, and I don't know if the State has been able to obtain that, or tends to present any evidence of that, but that would also probably [be] something my client would like to see. There are also a number of body cam[] videos that I have reviewed, all such evidence has been turned over to me, [but] Mr. Hameen has not had an opportunity to review that.
>
> "Judge, he asked me to request that the Court give us a little more time. As the Court knows that he is in custody on this case. He has been in custody for a significant period of time. He is not going to be able to post the bond. And considering the allegations, he does have a 10-year sentence hanging over his head, and if that sentence is executed or imposed today, that is [a] significant period of time, especially for somebody his age. So, Judge, I ask the Court to consider granting a continuance. I realize that at this point in time the State does have their witnesses here and that may inconvenience them. We have no problem setting this at a time where it will be most convenient for the State's witnesses, but for all those reasons we . . . would request a continuance."

The State responded that the trial court should deny Hameen's continuance motion because it could prove Hameen's probation violations without using the disputed evidence referenced by Hameen. It also alleged that given Hameen's prior continuances as well as his hired attorney's sudden and unexplained departure, Hameen was likely seeking his current continuance in an effort to delay the imposition of his underlying prison sentence should the trial court revoke his probation. Ultimately, the trial court

agreed with the State, denying Hameen's continuance motion for two reasons: (1) because Hameen already had multiple continuances; and (2) because Hameen was entitled to less due process during his probation violation proceedings than during his underlying criminal proceedings. It then considered the State's evidence in support of its request to revoke Hameen's probation.

During its case, in addition to Gibbs, the State had Hameen's probation officer, Hameen's counselor from the drug treatment facility, and the police officer who responded to Gibbs' emergency phone call testify on its behalf. Hameen's probation officer testified that Hameen's probation conditions required him (1) to successfully complete the drug treatment program and (2) to not commit new crimes while on probation. Meanwhile, Hameen's counselor from the drug treatment facility testified that the facility discharged Hameen before his successful completion of its drug treatment program because he argued with staff. Finally, Gibbs testified that Hameen gave her $425 in counterfeit money in exchange for her handgun on May 25, 2019, and the police officer who responded to Gibbs' emergency phone call testified about his initial investigation of Hameen's alleged crimes.

On the other hand, Hameen presented no evidence on his behalf. Instead, he argued that the State failed to establish that he had violated his probation conditions for two reasons: (1) because there was no evidence he engaged in drug use while in drug treatment; and (2) because the State failed to present sufficient evidence that he was ever in possession of Gibbs' handgun. In making this argument, Hameen further asserted that his "argument [was] that maybe [Gibbs'] identification is a little bit faulty on this." Hameen alternatively argued that if the trial court found that he violated his probation, then it should still impose an intermediate sanction upon him as opposed to revoking his probation.

But the trial court rejected Hameen's arguments, finding that the State had established by a preponderance of the evidence that Hameen had violated the conditions of his probation by not successfully completing the drug treatment program he had been admitted to and by committing the new crimes of larceny, counterfeiting, and felon in possession of a firearm while on probation. It then revoked Hameen's probation based on those violations under K.S.A. 2017 Supp. 22-3716(c)(8)(A) and K.S.A. 2017 Supp. 22-3716(c)(9)(B). Upon Hameen's request for a durational departure, however, the trial court modified Hameen's underlying prison sentence from a controlling term of 120 months' imprisonment to a controlling term of 100 months' imprisonment.

Hameen timely appeals from the revocation of his probation.

*Did the Trial Court Err by Denying Hameen's Continuance Motion?*

K.S.A. 22-3401 provides that "[a]ll persons charged with crime shall be tried without unnecessary delay." But it further provides that "[c]ontinuances may be granted to either party for good cause shown." Accordingly, although a trial court should strive to hear the State's motion to revoke probation as soon as possible, it may grant an offender's continuance motion if he or she establishes good cause for the continuance. See also K.S.A. 22-4303(b)(1)(C) (stating that the trial court may extend the offender's statutory right to a speedy probation violation hearing upon "good cause shown").

When a trial court denies an offender's motion to continue his or her probation violation hearing, this court will not disturb the trial court's decision "unless there has been a showing that the trial court abused its discretion and that the defendant's substantial rights have been prejudiced." *State v. Young*, 35 Kan. App. 2d 107, 110, 128 P.3d 1004 (2006) (citing *State v. Snodgrass*, 252 Kan. 253, 264, 843 P.2d 720 [1992]). A trial court abuses its discretion if its decision was based on an error of law, an error of

fact, or an otherwise unreasonable basis. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

While engaging in this review, Hameen, as the party asserting error, carries the burden of establishing that the trial court abused its discretion. 307 Kan. at 739. If Hameen can establish that the trial court abused its discretion, however, the State carries the burden of establishing that the trial court's denial of Hameen's continuance motion did not "prejudice" Hameen's "substantial rights." *Young*, 35 Kan. App. 2d at 110. Stated another way, this court will not reverse the trial court's denial of an offender's motion to continue his or her probation violation hearing if the trial court's error was harmless under the statutory harmless error test. See K.S.A. 60-261; *State v. Sanders*, No. 119,977, 2019 WL 4126487, at *4 (Kan. App. 2019) (unpublished opinion); and *State v. Volle*, No. 115,354, 2016 WL 7429457, at *4 (Kan. App. 2016) (unpublished opinion) (applying the statutory harmless error test in probation revocation cases). Under the statutory harmless error test, this court will affirm the trial court if there is no reasonable probability that the error affected the outcome of the trial in light of the entire record. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

Hameen here argues that the trial court's denial of his continuance motion prevented him from reviewing certain evidence related to the new crimes he had allegedly committed while on probation. In particular, Hameen asserts that he was unable "to present a defense" because he had not personally reviewed the following evidence before his probation violation hearing: (1) the redacted police reports related to his alleged commission of new crimes while on probation; (2) the police bodycam videos related to his alleged commission of new crimes while on probation; and (3) the "some other discovery" related to his alleged commission of new crimes while on probation that his attorney referenced at the probation violation hearing but had not yet received. Thus, Hameen asserts that his prior failure to review this disputed evidence provided the trial court with good cause to continue his probation violation hearing. And for this same

reason, he also argues that the trial court's denial of his continuance motion resulted in a violation of his due process rights. As a result, Hameen asks this court to reverse the trial court's revocation of his probation and remand to the trial court for a new probation violation hearing, which could not take place until after he had considered the disputed evidence related to his alleged commission of the new crimes.

Yet, the State argues that this court should affirm the trial court's denial of Hameen's continuance motion for three reasons. First, the State contends that Hameen's current challenge is not properly before this court because Hameen never explicitly argued to the trial court that the denial of his continuance motion would violate his due process rights. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) (holding that an issue not raised below cannot generally be raised for the first time on appeal). Second, the State contends that notwithstanding Hameen's failure to raise his specific due process argument before the trial court, this court should affirm the trial court's denial of Hameen's continuance motion because Hameen has otherwise failed to establish that he was entitled to the continuance. Third, the State contends that regardless of the preceding problem, this court should still affirm the denial of Hameen's continuance motion because any error stemming from the denial of his motion was harmless beyond a reasonable doubt.

On the State's first argument, although the State is technically correct that Hameen never explicitly argued to the trial court that the denial of his continuance motion would result in a violation of his due process rights, Hameen did argue that he needed the continuance so he could prepare for his probation violation hearing. Also, as noted in the facts section of this memorandum, one reason why the trial court denied Hameen's continuance motion was because Hameen was entitled to less due process during his probation violation proceedings than during his underlying criminal proceedings. Thus, although Hameen never explicitly argued to the trial court that the denial of his continuance motion would result in a violation of his due process rights, a key factor in

9

the trial court's denial of his continuance motion was because his due process rights in a probation violation proceeding were fewer than his due process rights in a criminal proceeding. In turn, we reject the State's primary argument that Hameen's challenge to the denial of his continuance motion is not properly before this court.

As for the State's second argument, the State's second argument has two parts. In the first part of its second argument, the State asserts that the trial court properly denied Hameen's continuance motion because Hameen failed to establish that his due process rights would be violated by the denial of his motion. According to the State, Hameen's minimum due process rights during his probation violation proceedings included the right to disclosure of the evidence against him but not the right to personally review all the evidence against him. Also, the State asserts that this court's decision in *State v. Billings*, 30 Kan. App. 2d 236, 238, 39 P.3d 682 (2002), supports its argument.

In *Billings*, this court explained that an offender during his or her probation violation proceeding is not entitled to "the full panoply of rights due a defendant in a criminal case." 30 Kan. App. 2d at 238. Additionally, in *Billings*, this court made a list of things included within an offender's minimum due process rights during probation violation proceedings:

> "Minimum due process includes written notice of the claimed violations of probation, *disclosure to the probationer of the evidence against him or her*, the opportunity to be heard in person and to present evidence and witnesses, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body, and a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. The probationer also has a right to the assistance of counsel." (Emphasis added.) *Billings*, 30 Kan. App. 2d at 238 (citing *Black v. Romano*, 471 U.S. 606, 612, 105 S. Ct. 2254, 85 L. Ed. 2d 636 [1985]).

Because the *Billings* court specifically mentioned an offender's right to disclosure of adverse evidence without ever discussing the offender's right to personally review this adverse evidence, this court could infer that an offender has no due process right to personally review all the adverse evidence against him or her during probation violation proceedings. See also *State v. Hurley*, 303 Kan. 575, 582, 363 P.3d 1095 (2016) (describing the list from *Billings*, which the *Billings* court adopted from the United States Supreme Court, as the "minimum due process rights for . . . probationers . . ."). Thus, this first part of the State's second argument may have merit. Nevertheless, because it is readily apparent that the State's second part of the State's second argument has merit, this court need not make this inference about Hameen's minimum due process rights.

In the second part of its second argument, the State emphasizes that Hameen has never explained why he needed to personally review the disputed evidence before his probation violation hearing. Although the State never uses the term "good cause" in its brief, the State essentially argues that the trial court did not abuse its discretion by denying Hameen's continuance motion because Hameen failed to establish good cause for his motion.

In making this argument, it notes that because of Hameen's prior continuances, his probation violation hearing had already been pending several months when he requested the continuance at issue. It notes that Hameen has never explained why his inability to review the redacted police reports or the police bodycam video before his probation violation hearing prevented him from defending himself at his probation violation hearing. It also points out that Hameen has never alleged or proffered that the redacted police reports or the police bodycam video was exculpatory.

Concerning the "other discovery" Hameen's attorney referenced at the probation violation hearing but had not yet received as part of discovery, the State assumes that Hameen's attorney was referring to security footage from the convenience store parking

lot where Hameen supposedly handed Gibbs $425 in counterfeit money in exchange for her handgun. Significantly, though, Hameen has never asserted that this "other discovery" his attorney referenced was actually the convenience store's security footage. Instead, both before the trial court and on appeal, Hameen has merely alleged that there was "some other discovery referenced in the reports" that neither he nor his attorney had reviewed. In any case, as with the other disputed evidence, the State points out (1) that Hameen has never explained how he was unable to defend himself at his probation violation hearing based on his failure to review this "other discovery" and (2) that Hameen has never alleged or proffered that this evidence was exculpatory.

The State's complaints about Hameen's vague arguments in support of his continuance motion are consistent with our Supreme Court caselaw. Previously, our Supreme Court held that to establish good cause for a continuance, the moving party must establish the necessity of the continuance: "Mere speculation that with more time something favorable may happen for the defendant does not constitute good cause." *State v. Beaman*, 295 Kan. 853, 864, 286 P.3d 876 (2012). As indicated by the State, however, before the trial court, Hameen did not even speculate that his personal review of the disputed evidence would help his defense. Instead, when arguing on Hameen's behalf, Hameen's attorney simply asked for the continuance so Hameen could consider the disputed evidence without ever explaining why Hameen's personal consideration of this disputed evidence was necessary for Hameen to present an adequate defense against his alleged probation violations.

In short, to establish good cause, Hameen needed to do more than just argue that he had not reviewed certain evidence related to his alleged new crimes while on probation. He needed to fully explain why his failure to review this disputed evidence would hinder his ability to defend himself against the State's allegation that he violated his probation by committing the new crimes. That is to say, he needed to fully explain why the denial of his continuance motion would result in a violation of his due process

12

rights. By not doing this, Hameen failed to provide the trial court with good cause to grant his continuance motion. So the trial court's denial of Hameen's continuance motion was reasonable and not an abuse of discretion.

The State's emphasis on the fact that Hameen's probation violation hearing had already been pending several months when he requested the continuance at issue is also persuasive. Indeed, when the trial court denied the continuance motion at issue on February 28, 2020, it had been over nine months since the trial court first issued the bench warrant for Hameen's arrest based on his apparent failure to successfully complete the drug treatment program. Also, the continuance at issue was Hameen's sixth motion to continue his probation violation hearing. Accordingly, Hameen had ample time to review any evidence that the State had provided him during discovery. In light of this fact, the trial court properly denied Hameen's continuance motion because Hameen's failure to review the disputed evidence related to his alleged commission of new crimes while on probation did not constitute good cause for his continuance motion.

More tellingly, from what is included in the record on appeal, it does not seem that Hameen requested his five prior continuances because he had not reviewed certain evidence. In fact, when the State made its sole motion to continue Hameen's probation violation hearing on December 3, 2019, Hameen objected to the State's continuance motion because his hearing "ha[d] been set for a while" and needed to "be resolved." Thus, Hameen's contention that he needed to continue his February 28, 2020 probation violation hearing so he could review the disputed evidence related to his alleged commission of new crimes on probation has always been disingenuous. Simply put, had Hameen really needed to review the disputed evidence before his probation violation hearing so he could present an adequate defense, he would have agreed to the State's continuance motion instead of objecting to it.

Also, the State has correctly argued that Hameen's personal failure to review the disputed evidence did not prevent Hameen's attorney from proffering why Hameen needed to personally review the redacted police reports and the police bodycam videos related to his alleged commission of new crimes while on probation. Again, when arguing on Hameen's behalf, Hameen's attorney explicitly stated that he had reviewed the redacted police reports and police bodycam video. Therefore, if there was some valuable information within this evidence, Hameen's attorney could have said so when requesting the continuance. Relatedly, because Hameen's attorney had reviewed the redacted police reports and police bodycam video, nothing prevented Hameen's attorney from using any valuable information from this evidence to defend Hameen during his probation violation hearing. But at his probation violation hearing, Hameen presented no evidence on his behalf. This, in turn, strongly indicates that the redacted police reports and the police bodycam video about Hameen's alleged commission of new crimes while on probation contained nothing that would benefit Hameen's defense.

As for the "other discovery" that Hameen's attorney referenced but never defined when requesting the continuance on Hameen's behalf, unlike the other disputed evidence, the record indicates that neither Hameen nor Hameen's attorney had reviewed this other discovery. Even so, when requesting the continuance on Hameen's behalf, Hameen's attorney could have at the very least explained what this "other discovery" was and why it might benefit Hameen's defense. Furthermore, assuming the State's assumption that this "other discovery" was the security footage from the convenience store parking lot where Hameen supposedly gave Gibbs $425 in counterfeit money in exchange for her handgun, at the very least, Hameen could have reviewed this evidence before filing his appeal. If he had done this, Hameen could explain to this court why his failure to review this evidence before his probation violation hearing resulted in a violation of his due process rights. In summary, given Hameen's complete failure to explain what this "other discovery" was or why this "other discovery" was valuable to his defense, Hameen has failed to establish that he had good cause to continue his probation violation hearing

14

based on either his or his attorney's failure to have previously reviewed the security footage from the convenience store.

Finally, it is important to note that even if we assumed for argument sake that the trial court violated Hameen's due process rights by denying his continuance motion, this violation of Hameen's due process rights was harmless beyond a reasonable doubt based on Hameen's failure to successfully complete the drug treatment program.

Before the trial court, Hameen sought the continuance so he could review the disputed evidence related to his alleged commission of new crimes while on probation. He did not seek the continuance to review any evidence related to his failure to successfully complete the drug treatment program he had been admitted to as part of his probation. Also, after the trial court denied his continuance motion, Hameen did not challenge the State's evidence supporting his failure to complete this drug treatment program. Instead, he suggested that he had successfully completed the drug treatment program because he was discharged only for behavior issues as opposed to drug use.

Now, on appeal, Hameen never addresses the fact that the trial court revoked his probation based on his alleged commission of new crimes while on probation as well as his failure to successfully complete the drug treatment program while on probation. To the contrary, Hameen's arguments concerning the denial of his continuance motion hinge solely on his inability to personally review the disputed evidence related to his alleged commission of the new crimes while on probation. Also, his insufficiency of the evidence argument just repeats the argument he made below, that is, that he had successfully completed drug treatment because he was discharged for behavior issues as opposed to drug use.

But when the trial court revoked Hameen's probation, it specifically relied on K.S.A. 2017 Supp. 22-3716(c)(9)(B). Under K.S.A. 2017 Supp. 22-3716(c)(9)(B),

15

because Hameen had received a dispositional departure to probation, the trial court could immediately revoke Hameen's probation upon any violation, including his failure to successfully complete the drug treatment program as directed. As a result, Hameen's argument about the trial court's denial of his continuance motion ignores that the trial court revoked his probation based on his alleged commission of the new crimes while on probation and based on his failure to successfully complete drug treatment while on probation. And as considered in more detail in the section below, Hameen's contention that he somehow successfully completed the drug treatment program despite being discharged from the program before finishing it is entirely meritless.

Thus, even if the trial court violated Hameen's due process rights by denying his motion to continue his probation violation hearing so he could review the disputed evidence related to his alleged commission of new crimes while on probation, this due process violation had no bearing on the validity of the trial court's decision to revoke Hameen's probation under K.S.A. 2017 Supp. 22-3716(c)(9)(B) based on his failure to successfully complete the drug treatment program. It therefore follows that the denial of Hameen's continuance motion does not entitle him to reversal of the revocation of his probation. So we affirm the trial court's denial of Hameen's motion to continue his probation violation hearing for this reason as well.

*Did the Trial Court Err by Revoking Hameen's Probation?*

When the trial court revoked Hameen's probation, it did so under K.S.A. 2017 Supp. 22-3716(c)(8)(A) and K.S.A. 2017 Supp. 22-3716(c)(9)(B). K.S.A. 2017 Supp. 22-3716(c)(8)(A) states that the trial court may immediately revoke an offender's probation without imposing any further intermediate sanctions if the offender committed "a new felony or misdemeanor" while on probation. Conversely, K.S.A. 2017 Supp. 22-3716(c)(9)(B) states that the trial court may revoke an offender's probation for

16

committing any violation without first imposing an intermediate sanction if that offender is on probation because of a dispositional departure.

All the same, for the trial court to revoke the offender's probation, the State must first establish that the offender violated his or her probation by a preponderance of the evidence. *State v. Dunham*, 58 Kan. App. 2d 519, 528, 472 P.3d 604 (2020). "A preponderance of the evidence is established when the evidence demonstrates a fact is more probably true than not true." *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). Once the State has proven the probation violation by a preponderance of the evidence, however, whether to revoke the offender's probation lies within the trial court's sound discretion. *Dunham*, 58 Kan. App. 2d at 528-29.

Thus, on appeal, this court must consider whether the trial court's finding that Hameen violated his probation conditions is supported by substantial competent evidence; substantial competent evidence is evidence that a reasonable person may deem sufficient to support a conclusion. *Inkelaar*, 38 Kan. App. 2d at 315. While engaging in this review, this court must view the evidence in the light most favorable to the State and must refrain from reassessing the trial court's credibility determinations against the offender. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

In his brief, Hameen first argues that insufficient evidence supported the State's contention that he violated his probation by not successfully completing the drug treatment program. As just noted in the preceding section, Hameen specifically argues that because he was discharged from that program because of behavioral issues as opposed to drug use, his time in the drug treatment program was successful. Hence, Hameen seemingly asserts that because he did not use drugs while in the drug treatment program, the trial court could not find that he failed to complete the drug treatment program in violation of his probation.

17

But this contention is entirely meritless. As stressed by the State in its brief, it is undisputed that Hameen had to complete a drug treatment program as a condition of his probation. And as Hameen concedes, he was discharged before he finished the drug treatment program he had been admitted into as part of his probation. Thus, despite Hameen's arguments otherwise, it is readily apparent that the State proved by a preponderance of the evidence that Hameen had violated his conditions of probation by not successfully completing the drug treatment program he had been admitted into as part of his probation.

On his remaining probation violations, Hameen argues that insufficient evidence supported the State's contention that he committed the new crimes of larceny, counterfeiting, or felon in possession of a firearm while on probation. In particular, Hameen notes that the State never admitted into evidence any communications that he allegedly had with Gibbs on the website where they met, never admitted into evidence the handgun he allegedly stole from Gibbs, and never admitted into evidence any videos documenting that he actually stole the handgun from Gibbs. Hameen asserts that by failing to present the preceding evidence, the State failed to establish that he committed any of the new crimes while on probation by a preponderance of the evidence.

But as stressed by the State in its brief, through Gibbs' testimony, it established that Hameen committed larceny, counterfeiting, and felon in possession of a firearm while on probation by a preponderance of the evidence. Once more, in addition to admitting into evidence the money Hameen allegedly handed Gibbs in exchange for her handgun, the State presented Gibbs' testimony to support the revocation of Hameen's probation based on his commission of new crimes while on probation. During her testimony, Gibbs alleged that when she met Hameen in the convenience store parking lot to sell him her handgun, Hameen—an undisputed felon on probation—provided her $425 in counterfeit money in exchange for her handgun. Hameen, on the other hand, presented no evidence to counter Gibbs' testimony. Instead, he simply argued to the trial court that

18

he had not violated his probation by committing the new crimes while on probation because "maybe [Gibbs'] identification [of him was] a little bit faulty . . . ."

In finding that the State established that Hameen committed larceny, counterfeiting, and felon in possession of a firearm while on probation, though, the trial court explicitly credited Gibbs' identification of Hameen as the man who gave her counterfeit money in exchange for her handgun. Additionally, in finding that Hameen had committed these new crimes, the trial court noted that "it wouldn't take an expert to know that [the money the State admitted into evidence was] fake" because the color and texture of the cash was inconsistent with United States currency and some of the cash had identical serial numbers. In short, because the trial court credited Gibbs' testimony, the State established that Hameen had committed the new crimes of larceny, counterfeiting, and felon in possession of a firearm while on probation by a preponderance of the evidence. See *Chandler*, 307 Kan. at 668.

Thus, to summarize, the State proved by a preponderance of the evidence that Hameen violated the conditions of his probation for not successfully completing the drug treatment program he had been admitted to as a condition of his probation and for committing the new crimes of larceny, counterfeiting, and being a felon in possession of a firearm while on probation. In turn, we affirm the trial court's revocation of Hameen's probation because it was a reasonable consequence of his probation violations.

Affirmed.