NOT DESIGNATED FOR PUBLICATION

No. 125,314

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRYCE EUGENE WILKINS SR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Submitted without oral argument. Opinion filed February 23, 2024. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.


PER CURIAM: A jury sitting in Shawnee County District Court convicted Bryce Eugene Wilkins Sr. of one count of attempted aggravated criminal sodomy for a sexual assault of E.S. after she passed out at a party. On appeal, Wilkins challenges the sufficiency of the evidence supporting the verdict. This case exemplifies the principle that even the severest of crimes may be proved with circumstantial evidence alone. At trial, the State wove a circumstantial blanket of guilt and tightly wrapped Wilkins in it. Wilkins also complains that the district court should have granted his motion for a mistrial when a law enforcement officer and the prosecutor referred to E.S. as a victim

1

several times in front of the jury in violation of an order in limine. The district court correctly denied the motion. We, therefore, affirm the verdict and Wilkins' resulting sentence.

FACTUAL AND PROCEDURAL HISTORY

When a criminal defendant disputes the evidence supporting a guilty verdict, as Wilkins does here, we review the trial record in the best light for the State, as the prevailing party, and in favor of the jury's conclusion. We neither reweigh the evidence generally nor make independent credibility determinations. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021); *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for us is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014). Given the issue before us, we recount the trial evidence in that way.

In April 2018, E.S., who was then about 22 years old, attended a party at a private home in Topeka along with some friends, relatives, and other people. Some of the partygoers, including E.S., were drinking heavily. After E.S. became sick to her stomach, two attendees assisted her to a bedroom in the house. When they left her there, E.S. was fully clothed but unconscious. Several hours later, E.S. awoke to find herself unclothed below the waist and with a pronounced soreness in her vaginal area.

E.S. went to a local hospital and met with law enforcement officers. At the hospital, a specially trained nurse conducted a sexual assault examination that included taking swabs of E.S.'s vaginal and rectal areas. Law enforcement officers collected the clothing she wore at the party, including a pair of leggings and her undergarments. E.S. explained that she had drunk too much vodka and passed out. She did not know what

2

specifically happened to her in the bedroom. Police investigators interviewed people who attended the party including Wilkins, who was there with his two adult sons.

The trial evidence, developed largely through those investigatory efforts, showed:

• One partygoer recalled seeing Wilkins in the kitchen near the backdoor for no obvious reason. The primary resident of the house testified he kept the backdoor locked.

• Attendees at the party recall Wilkins suggesting everyone go to an all-night restaurant. They did, though Wilkins was notably absent from the restaurant excursion.

• Another partygoer who lingered in a car outside the house recalled seeing Wilkins walking along the side of the building after everyone else had left.

• The day after the party a detective interviewed Wilkins. In that interview, Wilkins denied having sexual intercourse with anyone at the party. He conceded he had had too much to drink and did not categorically deny that he might have had some other sexual contact with a person at the party. The State presented those statements for the jury's consideration. Wilkins did not testify during the trial.

• A forensic examiner with the Kansas Bureau of Investigation tested the items collected during the sexual assault examination of E.S. The examiner testified that she found DNA consistent with Wilkins' genetic profile on the rectal swab of E.S. The DNA sample likely would have been from skin cells rather than semen, according to the examiner. She found semen on the leggings E.S. wore. The DNA profile developed from that evidence did not match Wilkins, and investigators were never able to match the profile to a known individual.

The State charged Wilkins with one count of rape and one count of aggravated criminal sodomy of E.S. At a pretrial hearing, the district court entered an order in limine that, among other things, precluded the lawyers and witnesses from referring to E.S. as "a victim" or "the victim" in front of the jurors. The district court apparently did not suggest a term or phrase that might be substituted. In entering the order, the district court said it would not declare a mistrial for an inadvertent violation of that limitation.

During the trial in February 2022, one of the law enforcement officers referred to E.S. as the "victim" several times in his testimony, and the prosecutor did so once in questioning the officer. Wilkins' lawyer did not object to the initial references but ultimately moved for a mistrial. The district court denied the motion.

The jury found Wilkins not guilty of rape and guilty of the lesser included offense of attempted aggravated criminal sodomy, a severity level 3 person felony. Wilkins had no relevant criminal history, and the district court imposed a guidelines sentence of 59 months in prison with postrelease supervision for life. As a result of the conviction, Wilkins is also required to register and report under the Kansas Offender Registration Act, K.S.A. 2022 Supp. 22-4901 et seq. Wilkins has duly appealed.

LEGAL ANALYSIS

As we have indicated, Wilkins raises two points on appeal: (1) the sufficiency of the evidence to support the conviction for attempted aggravated criminal sodomy; and (2) the denial of his motion for a mistrial. We address the issues in that order.

*Sufficiency of the Evidence*

To support a conviction for attempted aggravated criminal sodomy, the State had to present evidence that Wilkins undertook an overt act in furtherance of the crime of

4

aggravated criminal sodomy but failed in the completion of that crime. See K.S.A. 2022 Supp. 21-5301(a) (defining "attempt"); *State v. Hargrove*, 48 Kan. App. 2d 522, 558, 293 P.3d 787 (2013). An overt act is something that constitutes a direct and typically fairly immediate step toward completing the subject crime rather than mere preparation. 48 Kan. App. 2d at 558. To be guilty of an attempt, a defendant must specifically intend to commit the subject crime, here aggravated criminal sodomy. See *State v. Louis*, 305 Kan. 453, 461, 384 P.3d 1 (2016). As charged against Wilkins, the elements of aggravated criminal sodomy are anal penetration of a person with "any body part or object" when that person is incapable of giving consent because of his or her consumption of alcohol or other intoxicants and that condition is known or reasonably apparent to the perpetrator. K.S.A. 2022 Supp. 21-5504(b)(3)(C) (elements of aggravated criminal sodomy); K.S.A. 2022 Supp. 21-5501(b) (definition of sodomy).

We have already outlined the deferential standard of review to be applied in favor of the State when a defendant challenges the sufficiency of the trial evidence supporting a conviction. Taken in that light, the evidence circumstantially supported that Wilkins was aware that E.S. had passed out in a bedroom and, thus, was a vulnerable target for sexual assault. Wilkins cleared the house with a suggestion that everyone go to the all-night restaurant, and he conveniently disregarded his own invitation after stepping outside. He was then seen walking along the side of the house. And he would have been able to surreptitiously reenter through the backdoor that he could have unlocked earlier while he was in the kitchen.

On appeal, Wilkins largely focuses on the DNA evidence and argues it fails to support the crime of conviction. But the argument fails to account for the statutory elements of aggravated criminal sodomy. The crime requires anal penetration of the victim and may be accomplished with a body part of the perpetrator. One of the swabs taken during the sexual assault examination of E.S. contained DNA consistent with Wilkins, likely from his skin cells. That biological evidence was found in the immediate

vicinity of E.S.'s rectum. From those circumstances, the jurors could draw the perfectly reasonable conclusion that Wilkins intended to and attempted to penetrate E.S. with some part of his anatomy though not completing the act—depositing his skin cells where they were later found in the forensic examination of E.S. That circumstantially supports both the requisite intent and the overt act necessary for a conviction of attempted aggravated criminal sodomy.

*Denial of Mistrial*

We now turn to Wilkins' argument the district court erroneously denied his request for a mistrial because one of the State's witnesses and the prosecutor referred to E.S. as a "victim" several times in front of the jury. The references plainly violated the district court's order in limine. The issue turns on whether the district court should have abandoned the trial at that point as a remedy for the violations.

By statute, a criminal defendant may move for a mistrial when "[p]rejudicial conduct . . . makes it impossible to proceed with the trial without injustice." K.S.A. 22-3423(1)(c). The district court employs a two-step analytical tool in considering a motion for a mistrial. First, the district court must determine whether there has been "some fundamental failure" in the judicial process. *State v. Sherman*, 305 Kan. 88, 118, 378 P.3d 1060 (2016). If so, the district court should consider whether corrective steps may mitigate the harm and whether the residual prejudice creates an injustice requiring abandonment of the trial. 305 Kan. at 118-19.

We review the ultimate ruling for an abuse of judicial discretion. 305 Kan. at 118. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019); *State v. Ward*, 292 Kan.

6

541, Syl. ¶ 3, 256 P.3d 801 (2011). As the party asserting an abuse of discretion, Wilkins bears the burden of proving the district court erred. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Here, the district court found the conduct precipitating the mistrial motion to be inadvertent and relied on its pretrial admonition that it would not grant a mistrial based on an unintentional violation of the order. So the district court did not formally step through the legal analysis for assessing a motion for a mistrial. But we may affirm a district court ruling that reaches the right result, albeit through a faulty analysis. *State v. Holley*, 315 Kan. 512, 520, 509 P.3d 542 (2022).

What amounts to a fundamental failure isn't particularly clear. The test is a loose totality of circumstances examination. See *State v. McCullough*, 293 Kan. 970, 980-81, 270 P.3d 1142 (2012). It is an occurrence that injects into the trial some degree of demonstrable prejudice to the defendant. As we have said, there was an obvious violation of the order in limine. But we fail to see a similarly obvious fundamental failure resulting from the violation under the circumstances. In a strict legal sense, E.S. may have been a putative or apparent victim of the charged crimes (and any lesser included crimes) unless or until the jury returned a guilty verdict. But E.S.'s credibility was never in dispute, and she rather plainly was the victim of something untoward—at the very least having been left in a state of extreme intoxication and partial undress and more likely a sexual assault.

Assuming without deciding that the brief references to E.S. as a victim were materially prejudicial in some way and created a "fundamental failure," the prejudice did not render the trial so unfair that continuing the proceedings amounted to an injustice. The evidence well supported Wilkins' guilt. The determinative issue for the jury was not so much whether E.S. had been sexually assaulted—making her in common parlance a victim—but who victimized her in that way. We find no abuse of discretion in the district court's ultimate conclusion in denying the motion for a mistrial.

Affirmed.